

1  NANCY HERSH, ESQ., SBN 49091
2  MARK E. BURTON, JR., ESQ., SBN 178400
   HERSH & HERSH
3  A Professional Corporation
   601 Van Ness Avenue, Suite 2080
4  San Francisco, CA 94102-6316
5  Telephone: (415) 441-5544
   Facsimile: (415) 441-7586
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LODGED
CLERK, U.S. DISTRICT COURT
FEB 2 2 2011
CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
FEB 2 2 2011
CENTRAL DISTRICT OF CALIFO
BY                          DE

THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
CENTRAL DIVISION

UNITED STATES *ex rel.* MICHAEL RUHE, KRISTINE SERWITZ and VICENTE CATALA, and MICHAEL RUHE, Individually, and VICENTE CATALA, Individually, and KRISTINE SERWITZ, Individually,

    Plaintiffs,

v.

MASIMO CORPORATION,

    Defendant.

: CIVIL ACTION NO.
: CV 10-8169 CBM JCG
:
:
:
:
: **FIRST AMENDED**
: **COMPLAINT;**
:
: **JURY TRIAL DEMANDED**
:
:
: <u>**FILED IN CAMERA**</u>
: <u>**AND UNDER SEAL**</u>
:
:
:
:

DOCKETED ON CM
FEB 2 8 2011
0003

1  NANCY HERSH, ESQ., SBN 49091
2  MARK E. BURTON, JR., ESQ., SBN 178400
   HERSH & HERSH
3  A Professional Corporation
   601 Van Ness Avenue, Suite 2080
4  San Francisco, CA  94102-6316
   Telephone: (415) 441-5544
5  Facsimile: (415) 441-7586
6
7
8
9



FILED
CLERK, U.S. DISTRICT COURT

FEB 2 2 2011

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

10      THE UNITED STATES DISTRICT COURT

11   FOR THE CENTRAL DISTRICT OF CALIFORNIA

12            CENTRAL DIVISION

13

14  UNITED STATES *ex rel.*        : CIVIL ACTION NO.
    MICHAEL RUHE, KRISTINE        : CV 10-8169 CBM JCG
15  SERWITZ and VICENTE
    CATALA, and MICHAEL RUHE,     :
16  Individually, and VICENTE CATALA, : FIRST AMENDED
    Individually, and KRISTINE    : COMPLAINT;
17  SERWITZ, Individually,        :
18                                : JURY TRIAL DEMANDED
19          Plaintiffs,           :
20                                :
        v.                        : FILED IN CAMERA
21                                : AND UNDER SEAL
    MASIMO CORPORATION,           :
22                                :
23          Defendant.            :
                                  :
24
25
26
27
28

## TABLE OF CONTENTS

Page

I.    NATURE OF ACTION .......................................................................... 1

II.   PARTIES ............................................................................................. 3

III.  JURISDICTION AND VENUE ............................................................ 5

IV.   FILING UNDER SEAL ........................................................................ 6

V.    ORIGINAL SOURCE ........................................................................... 6

VI.   BACKGROUND ................................................................................... 7

VII.  PLAINTIFF-RELATOR MIKE RUHE'S MASIMO EMPLOYMENT .. 7

VIII. PLAINTIFF-RELATOR VICENTE CATALA'S MASIMO
      EMPLOYMENT ................................................................................ 12

IX.   PLAINTIFF-RELATOR KRISTINE SERWITZ'S MASIMO
      EMPLOYMENT ................................................................................ 18

X.    THE FEDERAL FALSE CLAIMS ACT............................................. 20

XI.   DISCOVERY...................................................................................... 22

XI.   COUNTS ........................................................................................... 23

HERSHANDHERSH
A Professional Corporation

## TABLE OF AUTHORITIES

Page

*Statutes*

21 U.S.C. §331 ............................................................................................... 7

28 U.S.C. §1331 ....................................................................................... 5, 6, 7

28 U.S.C. §1345 ........................................................................................... 5, 6

28 U.S.C. §1391 ............................................................................................... 6

28 U.S.C. §1395 ............................................................................................... 6

31 U.S.C. §3729 ..................................................................................... *passim*

31 U.S.C. §3730 ..................................................................................... *passim*

31 U.S.C. §3732 ........................................................................................... 5, 6

31 U.S.C. §3733 ............................................................................................. 20

42 U.S.C. §1320 ..................................................................................... 20, 22

42 U.S.C. §1395 ..................................................................................... 21, 22

*Rules*

45 C.F.R. §5.67 ............................................................................................. 23

42 C.F.R, §1001.101 ................................................................................... 22

F.R.C.P. 4 ......................................................................................................... 6

HERSHANDHERSH
A Professional Corporation

# FIRST AMENDED COMPLAINT

The United States of America *ex rel.* Plaintiff-Relator Mike Ruhe, Vicente Catala and Kristine Serwitz (the "Government Plaintiff"), Plaintiff-Relator Mike Ruhe, individually, Plaintiff-Relator Vicente Catala, individually, and Plaintiff-Relator Kristine Serwitz, individually, commence this *qui tam* complaint against Defendant Masimo Corporation ("Masimo" or the "Company").

Plaintiff-Relators were Masimo Sales Representatives for more than a year. During their employment, Plaintiff-Relator Ruhe, Plaintiff-Relator Catala and Plaintiff-Relator Serwitz, gained first-hand, non-public knowledge of Masimo's systemic unlawful business practices arising from false and/or fraudulent records, statements and claims made, used and caused to be made, used or presented by Masimo and/or its agents, employees and co-conspirators in violation of the Federal False Claims Act, 31 U.S.C. §3729 *et seq.*, (the "FCA" or the "Act"). Plaintiff-Relators bring this action to recover damages and civil penalties on behalf of the United States of America.

## I.   NATURE OF ACTION

1.     This case arises in principal part from Masimo's nationwide, coordinated deceptive marketing, promotional and research practices for its Radical-7, Pronto and Pronto-7 devices ("devices"). Masimo made and continues to make claims that these devices can accurately measure hemoglobin and SpO2, despite the knowledge that the devices cannot measure hemoglobin or SpO2 to the accuracy claimed by Masimo. Further, Masimo has published misleading, inaccurate data that was selected without any validated basis concerning the accuracy of these devices.

2.     Meanwhile, Masimo has obtained a CPT billing code for the

- 1 -

FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED

hemoglobin test performed by the Pronto devices (88738) and Medicare pays $7.19 for this purported noninvasive hemoglobin (SpHb) measurement.

3.    The conduct alleged herein shows a pattern of conduct designed to maximize profits for Masimo at the Government Plaintiff's expense, including causing the submission of false claims to the government for hemoglobin testing.

4.    Masimo's sales representatives were among the primary resources used to sell the Radical-7 and Pronto devices with the representation that they accurately measured hemoglobin and could be used to measure hemoglobin for beneficiaries of Government funded health plans, including Medicare, Department of Veterans health care benefits programs (the "VA") and the Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS"), now known as TRICARE management Activity/CHAMPUS ("TRICARE/CHAMPUS").

5.    Plaintiff-Relators have personal knowledge that Masimo engaged in promoting these devices for noninvasive hemoglobin (SpHb) measurement throughout the United States while simultaneously knowing that these devices could not measure hemoglobin as Masimo represented and actively encouraged providers to make false claims for reimbursement for testing using these devices.

6.    Masimo's promotion and representation of these devices ability to measure hemoglobin was calculated to, and did cause substantial expense to the Government for the noninvasive hemoglobin (SpHb) measurement testing. The Government Plaintiffs would not have funded noninvasive hemoglobin (SpHb) measurement testing but for Masimo's illegal representations, marketing and testing.

7.    Masimo's conduct endangered the health of government program

- 2 -

FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED

beneficiaries by placing them at greater risk of harm of developing serious, irreversible, and even life-threatening injuries due to inaccurate hemoglobin (SpHb) measurements and inaccurate SpO2 measurements that were known to Masimo but which Masimo intentionally concealed to protect its sales and profits.   Masimo knew that inaccurate hemoglobin testing would result in patients not receiving transfusions in a timely manner when needed and also would result in patients receiving dangerous medications and supplements when they are not actually needed.

8.   Thousands of Government health care beneficiaries have and continue to fall victim to serious, irreversible and potentially life threatening conditions as a direct result of Masimo's marketing and fraudulent activity.

9.   Masimo owes the federal government for testing costs which were funded through government health programs and statutory penalties associated with false claims submitted by third parties as a direct result of Masimo's conduct.

10.   The FCA permits any person discovering fraud perpetrated against the government to bring an action for himself and for the Government and to share in any recovery.   Plaintiff-Relators commence this *qui tam* action individually and on behalf of the Government Plaintiffs to recover treble damages and civil penalties under the Federal False Claims Act §§3729-3730.

## II.   PARTIES

11.   Plaintiff-Relators bring this action on behalf of the Government Plaintiffs to remedy the money Government health programs have been fraudulently induced to pay as a result of the false reimbursement claims submitted by and caused to be submitted by Defendant Masimo.   The Government Plaintiffs and Plaintiff-Relator Plaintiffs will collectively be referred to as "Plaintiffs".

- 3 -

FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED

12.     Plaintiff-Relator Ruhe is a citizen of the United States and resident of the State of California. He resides at 2907 Shelter Island Dr. Suite 105, PMB #239, San Diego, CA 92106 and was employed by Masimo from January 2009 until October 22, 2010 as a Sales Representative for the Radical-7 and Pronto devices. In this capacity, Masimo paid and directed Plaintiff-Relator to promote the Pronto devices as a noninvasive hemoglobin (SpHb) measurement testing device in the Southern California area. Masimo offered Plaintiff-Relator a bonus program available to him based upon his sales and lease of devices generated in his territory. Masimo also paid him to specifically promote a CPT code to health care providers allowing them to seek reimbursement from Medicare and other government programs while knowing that the submission of these claims was false due to the inaccuracies of the devices.

13.     Plaintiff-Relator Catala is a citizen of the United States and resident of the State of California. He resides at 2472 Panorama Terrace, Los Angeles, CA 90039 and was employed by Masimo from March 23, 2009 until October 22, 2010 as a Sales Representative for the Radical-7 and Pronto devices. In this capacity, Masimo paid and directed Plaintiff-Relator to promote the Pronto devices as a noninvasive hemoglobin (SpHb) measurement testing device in the Southern California area. Masimo offered Plaintiff-Relator a bonus program available to him based upon his sales and lease of devices generated in his territory. Masimo also paid him to specifically promote a CPT code to health care providers allowing them to seek reimbursement from Medicare and other government programs while knowing that the submission of these claims were false due to the inaccuracies of the devices.

14.     Plaintiff-Relator Serwitz is a citizen of the United States and

- 4 -

resident of the State of Colorado. She was employed by Masimo from January 2009 until September 28, 2010 as a Sales Representative for the Radical-7 and Pronto devices. In this capacity, Masimo paid and directed Plaintiff-Relator to promote the Pronto devices as a noninvasive hemoglobin (SpHb) measurement testing device in the Colorado area. Masimo offered Plaintiff-Relator a bonus program available to her based upon her sales and lease of devices generated in her territory. Masimo also paid her to specifically promote a CPT code to health care providers allowing them to seek reimbursement from Medicare and other government programs while knowing that the submission of these claims was false due to the inaccuracies of the devices.

15.     Defendant Masimo Corporation is a Delaware Corporation with its principal place of business in California at 40 Parker Irvine, CA 92618 and maintains a website at www.masimo.com.

### III.     JURISDICTION AND VENUE

16.     This is a civil action arising under the laws of the United States to redress violations of 31 U.S.C. §§3729-3730. This court has jurisdiction over the subject matter of this action: (i) pursuant to 31 U.S.C. §3732, which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§3729 and 3730; (ii) pursuant to 28 U.S.C. §1331, which confers federal subject matter jurisdiction; and (iii) pursuant to 28 U.S.C. §1345 because the United States is a Plaintiff.

17.     Plaintiff-Relators, through their attorneys, are concurrently providing to the Attorney General of the United States and to the United States Attorney a copy of this complaint and a written disclosure of substantially all material evidence and information the Plaintiff-Relators possess, in

- 5 -

FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED

accordance with the provisions of 31 U.S.C. §3730(b)(2) and Fed.R.Civ.P.4 (i).

18.    This Court has jurisdiction of this action under 28 U.S.C. §§ 1331 and 1345 and 31 U.S.C. §§ 3730 and 3732. The action arises out of violations of 31 U.S.C. § 3729 by the Defendant, and certain of the acts proscribed by 31 U.S.C. § 3729 on which this action is based occurred in this judicial district. In addition, the Defendants can be found, reside, transact and have transacted business in this judicial district, within the meaning of 31 U.S.C. § 3732(a). Defendant Masimo does business in this district by maintaining its Corporate offices here which is its principal place of business.

19.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1395.

## IV.    FILING UNDER SEAL

20.    In accordance with 31 U.S.C. § 3730(b)(2), this complaint is filed *in camera* and will remain under seal and will not be served on defendant Masimo until the Court so orders. A copy of the complaint and written disclosure of substantially all material evidence and information the Plaintiffs possess will be served on the United States pursuant to 31 U.S.C. § 3730(b)(2) and F.R.C.P. 4(i).

## V.    ORIGINAL SOURCE

21.    Through their employment with Masimo as Sale Representatives trained and employed with Masimo to promote the Radical-7 and Pronto devices, specifically for noninvasive hemoglobin (SpHb) measurement, as is alleged with particularity *infra*, Plaintiff-Relators acquired material, direct, independent and non-public knowledge of Masimo's unlawful acts described in this complaint.

22.     Accordingly, Plaintiff-Relators are an "original source" of the non-public information alleged in this Complaint within the meaning of 31 U.S.C. § 3730(e)(4)(A) and (B).

23.     Plaintiff-Relators are concurrently providing to the Attorney General of the United States through the United States Attorney General for the Central District of California a disclosure statement summarizing the claims and supported by known material evidence in accordance with the provisions of 31 U.S.C. §3730(b)(2).

## VI.     BACKGROUND

24.     As medical device's product labeling contains the devices instructions for use.   The device labeling is broadly defined by federal regulation, including 21 U.S.C. §331 *et seq.* which provides that all promotional material is also defined as "product labeling" and is stringently regulated as such.   By law, representations made in any labeling material must be truthful, not misleading and represent a fair balance of the information presented.    Any failure to fairly and accurately represent the required information about a medical device is considered misbranding and is a false and fraudulent statement as a matter of law. *See* 21 U.S.C. §§331 *et seq.*

## VII.   PLAINTIFF-RELATOR MIKE RUHE'S MASIMO EMPLOYMENT

25.     Mike Ruhe was employed by Masimo and participated in the launch of the Original Pronto in January 2009.   At that time there was no available clinical data to validate the accuracy of the Pronto and Masimo obtained approval of the device through the 510(k) process or "grandfathered" the approval of the device.   Subjects in clinical trials had been Hb tested using the predecessor Radical 7 'continuous monitor.'   Sales Representatives were told to use that data in the field and during sales discussion.   They were given

FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED

brochures to keep in pitch books that used the data from the Radical 7 device. The information was misleading, failing to acknowledge data had been collected using a different device.

26.     From January of 2009, issues of inaccuracy were constant from launch to the present.  Pronto devices gave measurements that were regularly 3+ g/dL or more off.  Sales representatives including Ruhe noticed these inaccuracies, as well as healthcare providers.   These providers reported problems to sales representatives including Ruhe.   However, Masimo management denied that any problem existed.  They blamed Ruhe's and other sale representative complaints on 'operator error.'  They reviewed testing protocols with the sales representatives over and over, blaming the protocols for the problems.  Sales Representatives, including Ruhe were told to spin a 'standard deviation explanation' so that Healthcare providers would accept 'outliers' as 3rd Standard Deviation patients.  However, Masimo represented that these outliers only constituted 3-5% of patients, in reality, inaccuracies of more than 3 g/dL occurred far more often.

27.     In May 2009, Plaintiff RUHE conducted device evaluations in three physicians' offices and compared the results of the Pronto and Radical-7 SpHb measurements against conventionally obtained lab values.  The mean variances rendered by the Pronto and Radical-7 when compared to actual lab values was greater than +/-2 g/dL at all three offices.  Per instructions from Marston, RUHE saved these results to an SD flash card and sent them via FedEx to Marston.

28.     In July 2009, MASIMO held a division-wide Physician Office market meeting in Irvine attended by RUHE.   During this meeting, MASIMO's Executive Vice President of Marketing, Paul Jansen, admitted to the representatives in the division that inaccuracies that are beyond +/-2 g/dL

- 8 -

FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED

of SpHb (on the Pronto) "will kill you in a spot check device" in terms of physician acceptance, but are more acceptable with a continuous monitor such as the Radical-7. This is because, according to Jansen, the "real clinical value" in a continuous monitor is the "trending" line (up, down, or stable) of a patient's hemoglobin score over the course of time. This statement, that the "trend" was what mattered on continuous measurement devices, was contrary to the accuracy spec of the Radical-7, which was the same as, and formed the basis of FDA approval of the Pronto and Pronto-7.

29.   In May of 2009, Masimo Management announced a voluntary recall of the Pronto device, based on evaluation results being conducted at numerous physician office "PO" sites around the country. This followed a disastrous PriMed show appearance, where doctors and healthcare administrators would have their Hb measurements taken at a Masimo booth. Results again were dismally inaccurate. Joe Kiani, Masimo CEO, himself was ashamed.

30.   In the middle of 2009, shortly after this voluntary recall took place, Ruhe and the other sales representatives were asked by management to return recalled Pronto devices to at least one doctor in each of their territories. That way Masimo asserted that it would not have to notify the FDA of a self-initiated recall, because Masimo did not recall more than 90% of the devices sold.

31.   The Director of Marketing for Masimo, Gary Marston, made a comment to Kristine Serwitz that Ruhe's numerous 1022 forms (Customer Complaint/Feedback Forms) submitted in May and June of 2009 were 'frivolous.' There were approximately eight of these forms submitted, all having to do with product malfunctions, i.e. measurement inaccuracies. The Vice President of Sales for Masimo, Kevin Hammond, made similar

- 9 -

FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED

HERSH AND HERSH
A Professional Corporation

comments to sales representative Vicente Catala regarding 1022 forms he submitted. The message was made clear to the sales representatives that 1022 submissions were discouraged. The 1022 forms submitted by Ruhe are attached hereto as Exhibit A. However, to date, the FDA's MAUDE database indicates that Masimo has filed no reports concerning any Pronto device.

32.     As a result of MASIMO's recall of the Pronto in July 2009, Plaintiffs and the other TMs suddenly had no product to sell. MASIMO transitioned its Pronto TMs into the acute care setting and asked them to sell the Radical-7. Because the Radical-7 had similar inaccuracy issues to those experienced with the Pronto, Plaintiffs RUHE, CATALA and SERWITZ were instructed to focus on the "trending" aspect of the Radical-7, instead of the actual SpHb number the device produced, when making sales calls.

33.     On one occasion in the middle of 2010, John Birkle, Masimo West Region Manager, called Ruhe and told him about his conversation with Kristine Serwitz regarding the moral issue associated with selling a device that's inaccurate. He told Ruhe that he suggested she and Ruhe consider pursuing other opportunities if we 'don't have the stomach for this.' He said he realizes the device is having it's challenges, "but at the end of the day, it's what we've been hired to sell."

34.     On or about July 7-9, 2010, Kevin Hammond, VP of physician office sales admitted at Massimo's 'all-division' semi-annual meeting that the Pronto device Masimo sold in Q1 and Q2 of 2010 was a "piece of crap." He made that comment at the time he thought they were no longer going to be selling it, and that they would now only be selling the new generation Pronto-7

35.     However, Ruhe and the sales representatives were later told that engineering would not have a pediatric sleeve ready anytime soon, and that they would have to continue selling the original Pronto devices to our pediatric

- 10 -

FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED

offices.

36.   At the same conference, Director of Marketing Manager, Gary Marston, asked the sales team if there was anything else they needed in the field that would help them to sell more, and Kevin Hammond responded under his breath to those around him, "yeah, some smoke & mirrors."

37.   On September 21, 2010, Jay Hachey, Product Manager, told Ruhe that Masimo was 'hiding' the SpO2 in the display reading to get around the FDA.  He said otherwise Masimo would have a 6-month wait (best case scenario) for the FDA to approve the revision (removal of SpO2 from device).

38.   In the third quarter of 2010, Corkie Matson sales representative for the Sacramento area co-traveled with John Birkle, Western Regional Manager and had a Pronto device fail (significantly inaccurate hemoglobin measurements) in front of a customer.  He told her, "Let's get out of here" before they'd have to show more doctors at that location doing further damage to the sales process.  When they got out to the car Matson told Birkle that it is unfortunate the devices fail the way they do, but that it's Kevin Hammond's marching order to sell it regardless.  "It's what they're paying us to do."  He went on to say that, "even if this thing caught fire, we'd still be expected to sell it."

39.   On September 17, 2010 Ruhe participated in a conference call on the subject of 1022 submissions with Paul Jansen, VP of Marketing for Masimo, who said that all measurements within +/- 3 g/dL of lab value are technically within specifications and do not constitute a 1022 submission.  However, this information was contrary to what Masimo was representing in the labeling of the device and what the sales representatives were trained to tell healthcare providers.  Masimo management was trying to hype a message about a pending software update making the Pronto-7 device 'more accurate'

- 11 -
FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED

yet Masimo had been claiming all along that the Pronto-7 device was already accurate and well within specifications.

40.   On September 20, 2010, Ruhe discussed an upcoming device evaluation, scheduled for September 28, 2010 at Scripps Health, with John Birkle who told Ruhe to try and retain the evaluation data so it's in Ruhe's possession—not Scripps.  (That way, Masimo was in control of the data and how the results would be presented to Scripps afterward.)  Testing results that Ruhe did obtain at various sites are attached hereto as Exhibit B

41.   Further, on September 20, 2010, John Birkle told Ruhe that if they were unable to do software updates to his demo devices in time for the upcoming evaluation on September 28 at Scripps, that they should postpone it. This demonstrated his understanding that the Pronto devices are NOT in fact within Masimo's accuracy specification.

## VIII.  PLAINTIFF-RELATOR VICENTE CATALA'S MASIMO EMPLOYMENT

42.   In March of 2009, Catala was hired and 18 sales representatives were brought in to headquarters in Irvine, California for training.   In the course of training, Catala and the other representatives were given Prontos to test themselves and each other to familiarize them with the product they were hired to sell.  At that time, the device measurements were already extremely unreliable and inconsistent.  Catala remembers that one of his readings was 4 grams/DL off of the lab result taken on the same day.   When Catala questioned these inaccuracies, Masimo management told him that it was his body chemistry that was causing some inaccuracies.

43.   During the second quarter of 2009, Masimo began selling the Pronto on a LMR basis.  Healthcare providers could buy just the test uses by paying for each time they tested a patient and get the device to try for free for

- 12 -

FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED

a few months.  Catala sold ten of these devices but only actually ended up delivering three because of a huge problem with measurement accuracy.  As he was conducting demonstrations, everyone on his sales team noticed that the devices were inaccurate far more often than according to the specifications in the literature.  Catala had results very often that when compared to laboratory blood results, were 2-4 grams/DL off.  This was unacceptable to his physicians as well and many returned the device.

44.     Catala and the sales team complained about these inaccuracies and were constantly told to sell the devices anyway.  Overall, all the sales people were dissatisfied with the quality of the Pronto and at the disregard that came from the management regarding these inaccuracies.  The management did not care.  John Birkle told him, that this is what they were hired to do and even though it didn't work well enough, they still needed to sell it.  Birkle stated that they were looking for "early adopters".  Catala responded that even for early adopters, the device was a diagnostic and needed to provide accurate results.  However, Catala's concerns were shrugged off and Birkle changed the subject.

45.     Within the next few months, Masimo decided to take the Pronto device off the market because of all the customer complaints received and because Masimo knew that the sales team did not believe in the Pronto due to all of the problems Catala and the other sales representatives experienced.

46.     Masimo management admitted at that time that there were accuracy problems and said that was the reason they were taking time off from some of its marketing efforts.  Over the next few months Catala and other representatives were directed to other projects within the company and one of Catala's assignments was to find a data collection site that would be willing to let Masimo test their patients with the Pronto vs. a laboratory reading.  Catala

- 13 -

FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED

was to be testing the Rev E technology revision on the Pronto sensor, it was supposed to be more accurate than the original version had been, although, the original version was labeled to be accurate within 1 g/Dl 68% of the time.

47.    Catala tested a total of 73 patients.  In the first study, Catala tested 50 patients at Clinica Medica San Miguel in Los Angeles and in this study 20 of the 50 patients were >1 g/Dl off, making the device out of specification.  The device was within 1 g/Dl only 46% of the time when specification called for it to be within 1 g/Dl 68% of the time.  Further, it was supposed to be within 2 g/DL 95% of the time and actually was within 2 g/DL only 70% of the time.

48.    In the other study of 23 patients Catala conducted, the results were even worse, showing only 17% of patients tested were within 1 g/dL and only 52% within 2 g/dL.  All of this data was collected and submitted to Masimo, never to be mentioned by them again.

## Q1-2010

49.    During the first quarter of 2010, Masimo was selling other products in the hospital setting and waiting for the Pronto-7 to be released. Suddenly Masimo announced that there had been some issue with the FDA approval for the Pronto-7 and that it was indefinitely delayed.  So effective immediately, sales representatives would all be selling the original Pronto device.  The team was very dismayed because they knew that this device was inaccurate.  Catala himself had just conducted these clinical trials and had seen and submitted the results.  However, sales representatives had no choice if they wanted to keep their jobs.

50.    Over the next few months, Catala and other sales representatives witnessed severe accuracy issues.  At PriMed medical convention in Anaheim, California, Catala and other sales representatives were testing hundreds of

FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED

physicians and the majority of the measurements were so far off what the physicians knew their Hg to be that they were even laughed at at times. Many of the physicians became very suspicious when they saw outrageous measurements on the device. When Catala and other representatives brought this up to Masimo management, they encouraged Catala and other representatives to make something up or tell the physicians that they must be dehydrated. These were ridiculous explanations to justify wildly inaccurate readings.

51.    This continued as Masimo continued to sell the device. Catala continued to see severe inaccuracies in all of the devices that he placed and received complaints from five of his healthcare provider customers.

52.    One example occurred at Avenal Community Health Clinic. They complained that their device was extremely inaccurate and that they were seeing readings off by as much as 3+ g/dL. The physician wanted to return it but John Birkle and Kevin Hammond of Masimo told Catala to talk them into keeping it, which he did reluctantly. Catala has an email that he sent to Kevin Hammond, detailing the physician's complaints and got absolutely no response from him or any other Masimo management.

53.    Catala recently had serious discussions with John Birkle, and told him that he had serious issues continuing to sell the Pronto because he knew that they were going to have problems with accuracy. Birkle admitted to Catala at that time that accuracy was not what it should be, but that we were still being paid to sell it and that was our job. Essentially, Birkle was saying to keep quiet and sell. He did admit to Catala that the device was very inaccurate and that no one was going to put up with that for long. He also said to Catala that if they didn't fix the accuracy, they were all going to be looking for a new job, including the managers. He also said to Catala that he had never had

- 15 -
FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED

worked for a company that did things so backwards such as launching a product without testing it first.

54.     For the launch of the Pronto-7 in mid 2010, sales representatives met in San Antonio where there was a question and answer session regarding concerns from the field.   Sales representative Kip Horton brought up his accuracy concerns and was shot down by Rick Fischel.   Then, Chris Pappas brought up that he didn't feel confident enough in the accuracy to jeopardize a long-standing relationship of his in a nephrology group by putting in the Pronto-7 because of his accuracy concerns.   Catala disagreed with Masimo's promotional and labeling activities but was told by Rick Fischel to "go back to school" when he expressed his concerns.

55.     Rick Fischel refused to admit that the devices had any accuracy issues at all, and in fact, tried to demonstrate how accurate it was and kept saying that it was spot on every time.

56.     The following day, Gary Marston told Catala in the meeting that "there are things that we are not allowed to discuss with the sales team about accuracy" and that if we didn't think this was accurate enough to sell, then "you shouldn't be selling new technology". But in the same breath, he admitted that there are definitely accuracy concerns.

57.     A month prior to this meeting, Catala was working with Jay Hachey, Pronto product manager, for a day.  That day Hachey told Catala that the Pronto platform would be abandoned and that all of the company's resources were now being put into the Pronto-7 (P7). This disturbed Catala considering that Hachey had just accompanied Catala in the installation of 2 Prontos earlier that day to one of his customers. Those Prontos are still in use in October of 2010, because Masimo does not have a pediatric sensor for the Pronto-7.

FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED

58.   At the meeting in San Antonio the sales representatives were trained to provide a "standard deviation" explanation to healthcare providers for the Pronto accuracy issues.

59.   Following the San Antonio meeting, Kevin Hammond rode with Catala in the field to install the very first Pronto-7.  During this installation Kevin did not discuss the accuracy issue with the physician and discouraged Catala from mentioning anything about the issue.

60.   During the Fall of 2010, Catala developed increasing concerns and had numerous conversations with John Birkle regarding the accuracy of the Pronto and Pronto-7 devices.

61.   Catala has filed approximately fifteen (15) 1022 forms regarding accuracy issues experienced by customers and product malfunctions.  These 1022 forms will be provided separately as the clinical trial data discussed herein.

62.   In September of 2010, Catala was asked to ride along with Marcelo Lamego, head of engineering for Masimo Labs.  In the course of riding with him and visiting customers it was obvious that the device was failing time and time again without giving accurate measurements within specifications.  Lamego admitted to Catala that the SpO2 feature didn't really work at all, that it only had 1 infrared light and not red and infrared like it is supposed to and that they just put it on there so they could get it through the FDA.  He said that they were working on a way to "hide" that reading from the device so that the healthcare provider wouldn't have to question why it didn't work accurately.  He told Catala that it would be coming in the next software update.

63.   Catala heard numerous stories from colleagues as well that their devices were failing far more often then described in the devices

- 17 -
FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED

HERSHANDHERSH
A Professional Corporation

specifications.

64.    Finally, Catala filed a 1022 concerning a doctor named Huizenga, who happens to be the physician for the TV show the Biggest Loser.  Dr. Huizenga had such a bad accuracy experience with the original Pronto, that he previously told Catala to get it out of his office.  Catala went back to him later with the Pronto-7 and he agreed to do a ten patient evaluation compared to standard blood laboratory testing and see how much better the Pronto-7 is now.  However, he was only able to test two patients because the device failed every time on each patient after that.  For the measurements on two patients, the Pronto-7 was 2.3 grams and 1.9 grams off from the lab result.  When Catala reported this problem to Kevin he responded by email "looks like we are the biggest losers!"  To my knowledge no investigation was ever conducted and the company has not reported to these failures to the FDA.

65.    Masimo management discussed the fact that the predicate device to the Pronto-7, the Pronto, had both red and infrared lights but the Pronto-7 only had infrared light which accounted for its inaccurate SpO2 measurements.

## IX. PLAINTIFF-RELATOR KRISTINE SERWITZ'S MASIMO EMPLOYMENT

66.    Kristine Serwitz was hired in January of 2009 to promote the Pronto devices for hemoglobin testing.  Soon after, she noticed and began questioning the accuracy of the devices.  Near the end of January or beginning of February 2009, Serwitz attended a meeting with the Anesthesia Department at the University of Colorado.  Also attending from Masimo executive management was PT Barnum, Director of Field Clinical Services, and Deb Hurni, Clinical Specialist covering Colorado.  It was clear that Masimo's hemoglobin accuracy was in doubt.  Since Gary Marston had already been

- 18 -

FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED

spinning "incorrect sensor placement" and "user error" to excuse inaccuracies, Serwitz demonstrated the Pronto for Barnum. He said, "You're putting on the sensor correctly, it's the device, not you Kristine." Barnum then confirmed that Masimo had been experiencing these problems with Hb measurements for a long time—well over a year—and in fact had even pulled the device from the show floor during a PriMed conference in Florida back in 2008, because of all the problems. "We haven't been able to figure this thing out," Barnum admitted.

67.   Kevin Hammond was angry that Barnum had told Serwitz so much. Serwitz told Birkle & Hammond that they (upper management) know problems exist. Hammond responded, "PT Barnum needs to keep his mouth shut, because he's creating doubt in your mind." After a lunch meeting at the University of Colorado Anesthesia Dept., Vaughn Elstrom (Regional VP, Southwest) arrived with John Yapello (Clinical Specialist Manager) to meet with the Respiratory Department. They met separately with Serwitz before she left. Vaughn sarcastically told Kristine, "Good luck!" referring to her task of having to sell such a primitive device that's clearly not ready for the market that was priced at $6,000.00 per unit at that time. Like Barnum and others on the executive management team, Eldstrom knew, even at this early stage, that the device had serious problems and was considered by Masimo insiders to be inaccurate.

68.   In Serwitz's Colorado territory, concerns about altitude affecting the hemoglobin testing devices' accuracy arose, but Masimo told clinicians that altitude didn't affect Pronto's ability to produce an accurate reading. However, Masimo had never researched this issue and employees, including Serwitz, were receiving obviously inaccurate Hb readings at altitude.

69.   When Serwitz voiced early concerns about accuracy and

- 19 -

FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED

malfunctions, when the devices often did not display readings at all, the common explanation was, "it's cold, so perfusion is too low to get an Hb reading." During an early ride-along with Birkle, the head nurse at Exempla Endocrinology in Colorado asked how altitude might affect the accuracy of Hb measurements taken by the device. Since there's no question it does significantly affect the accuracy of SpO2 measurements. Birkle answered, "It has no effect at all."

70.    In February of 2009, Deb Herni asked Serwitz if she was filling out "1022 forms," which were Masimo internal forms used to catalog customer complaints, product returns, or other issues with a device. Kristine didn't know what they were, so Herni explained the forms to her. Serwitz then contacted Birkle and brought up the subject of using the 1022 forms to report device problems, but he discouraged her from filling out the 1022 forms. He explained that 1022 forms didn't apply to the physician office market division and that instead they would discuss product issues pertaining to the Pronto devices on weekly regional conference calls.

71.    Because Masimo ignored Serwitz's complaints, she was forced to resign.

### X.  THE FEDERAL FALSE CLAIMS ACT

72.    The False Claims Act, 31 U.S.C. §§ 3729 to 3733, provides, in pertinent part, that:

(a) Liability for certain acts.  Any person who--

(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

- 20 -

HERSH AND HERSH
A Professional Corporation

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

(3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;

(b) Knowing and knowingly defined.  For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information--

(1) has actual knowledge of the information;

(2) acts in deliberate ignorance of the truth or falsity of the information; or,

(3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.

31 U.S.C. § 3729.

### *General Duties of Medicare Part B Providers*

73.   To be eligible for reimbursement under Medicare Part B for services rendered to program beneficiaries, the health care provider must enroll in the Medicare Program.  The provider must, *inter alia*, enter into a "provider agreement" with Medicare to enroll in the program.  42 U.S.C. §§1395n(a), 1395cc(a).

74.   Pursuant to the Provider Agreement, a provider agrees to comply with all applicable statutes, regulations and guidelines.  A provider seeking reimbursement has contractual obligations to:

FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED

1      •        Bill Medicare for only reasonable and necessary medical services,
2  42 U.S.C. §1395y(a)(1)(A);

3      •        Not make false statements or misrepresentations of material facts
4  concerning requests for payments under Medicare, 42 U.S.C §§1320a-
5  7b(a)(1)(2), 1320a-7, 1320a-7a, 42 C.F.R §1001.101(a)(1);

6      •        Provide evidence that the service given is medically necessary, 42
7  U.S.C §1320c-5(a)(3); and,

8      •        Certify when presenting a claim that the service provided is a
9  medical necessity, 42 U.S.C §1395(a)(2)(B).

10      •        Masimo's product labeling and promotional material included a
11  technical bulletin available at http://www.masimo.com/pronto-7/index.htm.
12  This technical bulletin was based upon a study conducted by sales
13  representative Kip Horton from the North Carolina/Virginia territory.  Horton
14  revealed to Ruhe that there were far more patients involved in the study
15  referenced and that the patients used for the published results were picked out
16  of the patient population that were actually tested.  The published document
17  only describes the result of 89 patients, but hundreds were tested.

18      75.    Additionally, the "technical bulletin" describing this study was
19  actually written by Gary Marston, the Director of Marketing.  Since this
20  publication, both Ruhe and Catala have conducted similar studies as part of
21  their duties at Masimo that have resulted in drastically different results than
22  what Masimo has published.

## XI.  DISCOVERY

24      76.    This complaint identifies specific false claims, records and
25  statements presented or caused to be presented by Defendant in furtherance of
26  its fraudulent schemes and delineates the basic framework, procedures, and the
27  nature of the fraudulent schemes.  Discovery will be necessary to identify each

HERSH AND HERSH
A Professional Corporation

false claim, record, and statement, because, *inter alia*:

- The false claims, records, and statements are numerous and were presented over an extended period of time; and

- Documents and other materials evidencing many of the false claims, records and statements are peculiarly within the possession of the Defendants and third parties including the data necessary to ascertain who was paid for conducting Pronto testing.

77.     While some documentary evidence of the false claims, records and statements are within the possession of third parties such as the Health Care Financing Administration, Plaintiff-Relators are legally prohibited from obtaining such records. *See* 45 C.F.R. §5.67. The Department of Health and Human Services will not disclose names and addresses of individual beneficiaries of its programs, or benefits such individuals receive; or claim files maintained by the Social Security Administration, the Public Health Service and the Health Care Financing Administration.

78.     This suit is not based upon prior public disclosures of allegations or transactions in a criminal, civil or administrative hearing, lawsuit or investigation or in a Government Accounting Office or Auditor General's report, hearing, audit, or investigation, or from the news media.

## XI.   COUNTS

### Count I

### (Violation of False Claims Act – 31 U.S.C. §§ 3729(a)(1))

### Presenting and Causing to be Presented False Claims

79.     Plaintiff-Relators incorporate by reference and reallege the foregoing paragraphs as if fully set forth herein. This Count is brought by Plaintiff-Relators in the name of the United States under the *qui tam*

- 23 -

HERSHANDHERSH
A Professional Corporation

provisions of 31 U.S.C. §3730 for Defendant's material and numerous violations of 31 U.S.C. §3729(a)(1).

80.    By virtue of the above-described acts, among others, Defendant knowingly presented, or caused to be presented, to the United States Government, false or fraudulent claims for payment or approval knowing that such claims were false, fictitious or fraudulent at the time they were submitted in that Defendant Masimo represented that the device labeling was truthful, accurate and fair balanced, when in fact Defendant knew those claims were false, or Defendant was deliberately ignorant of or acted in reckless disregard of the fact that such claims were false.

81.    Defendant's unlawful practices occurred with the knowledge and consent of management.

82.    Upon information and belief, Defendant's unlawful practice of presenting or causing to be presented false claims for payment to the Government is ongoing.

83.    Plaintiff United States, unaware of the falsity of the thousands of claims which the Defendant presented or caused to be presented to the United States for at least the past two years, and in reliance on the accuracy thereof, paid Defendant Masimo and/or healthcare providers for claims that would otherwise not have been allowed, in an amount to be determined at trial.

84.    By reason of Defendant's unlawful practices, substantial numbers of eligible Medicare beneficiaries have been provided with medically unsupported hemoglobin testing, worse the testing result they have received have been substantially inaccurate and not to the devices specifications. This unlawful practice provided substantial profits to Defendants to the substantial financial harm of the Government. These inaccurate readings also caused additional expense because patients either did not receive prompt preventative

FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED

treatment when necessary or received an unnecessary treatment due to the inaccurate readings.

85.   The amounts of the false or fraudulent claims to the United States are material.  Plaintiff United States, being unaware of the falsity of the claims presented or caused to be presented by the Defendants, and in reliance on the accuracy thereof, have paid and may continue to pay Defendant Masimo and/or providers and Masimo may continue to derive income from the continued billing for tests using the Pronto devices.

## Count II
### (Violation of False Claims Act – 31 U.S.C. § 3729(a)(2))
### Creation or Use of False Statements or Records to Obtain Payment of False Claims

86.   Plaintiff-Relators incorporate by reference and reallege all of the foregoing paragraphs as if fully set forth herein.  This Count is brought by Plaintiff-Relators in the name of the United States under the *qui tam* provisions of 31 U.S.C. §3730 for Defendant's violation of 31 U.S.C. §3729(a)(2).

87.   By virtue of the above-described acts, among others, Defendant knowingly made or used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by the Government, in violation of 31 U.S.C. §3729(a)(2).

88.   Defendant intended the false records or statements it made or used, or caused to be made or used, to be material to the Government's decision to pay or approve the false claim; indeed the purpose of these records of statements was to defraud the government.

89.   Defendant's unlawful conduct occurred with the knowledge and consent of management.

HERSHANDHERSH
A Professional Corporation

- 25 -

FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED

90.     Plaintiff United States, unaware of the falsity of the records and/or statement or statements which the Defendant made or used, or caused to be made or used to get its thousands of false claims paid by the United States, and in reliance on the accuracy thereof, paid said claims that would otherwise not have been allowed, in an amount to be determined at trial.

91.     By reason of Defendant's unlawful practices, namely, the provision and use of inaccurate testing devices and use of false and fraudulent records or statements, or causing such false statements or records to be made are used, as the basis to induce the Government to pay false and fraudulent claims made to the government, numerous false and fraudulent claims have been paid by the government.  Defendant went so far as to furnish healthcare providers with examples of government reimbursements and reimbursement rates to induce them to use these products and entered into contracts with providers where they profited from each test administered and billed to the government.

92.     The amounts of the false or fraudulent claims to the United States are material.  Plaintiff United States, being unaware of the falsity of the records and/or statements made or used, or caused to be made or used, by the Defendants to get false claims paid, and in reliance on the accuracy thereof, paid and may continue to pay for services fraudulently provided to Government beneficiaries.

## Count III

### Conspiracy

### (Violation of False Claims Act – 31 U.S.C. §3729(a)(3))

93.     Plaintiff-Relators incorporate by reference and reallege the foregoing paragraphs as if fully set forth herein.  This Count is brought by

FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED

Plaintiffs in the name of the United States under the *qui tam* provisions of 31 U.S.C. §3730 for Defendant's violation of 31 U.S.C. §3729(a)(3)

94.     By virtue of the above-described acts, among others, Defendant conspired to defraud the Government by getting false or fraudulent claims allowed or paid, in violation 31 U.S.C. §3729(a)(3).

95.     By reason of Defendant's unlawful practices, substantial numbers of ineligible patients enrolled in Government programs that have been used as unwitting pawns by the Defendant and these practices thus provided substantial profits to Defendant.

96.     The Defendant conspired to defraud the government by presenting or causing to be presented false and fraudulent claims to the government. The purpose of Defendant's conspiracy was to defraud the government.

97.     Defendant Masimo's unlawful billing practices occurred with the knowledge and consent of management of Masimo.

98.     The amounts of the false or fraudulent claims to the United States are material. Plaintiffs United States, being unaware of the conspiracy to get false and fraudulent claims allowed or paid, made material payments based on the false records and statements provided by the Defendant for inappropriate services billed to the Medicare program to get false claims paid.

## JURY DEMAND

99.     Plaintiff-Relators demand trial by jury on all claims.

## PRAYER

WHEREFORE, Plaintiff-Relators pray for judgment against the Defendant as follows:

a.      That Defendant be found to have violated, and be enjoined from future violations of, the federal False Claims Act, 31 U.S.C. §3729-32.

FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED

b.     That this honorable Court enter judgment against Defendant in an amount equal to three times the amount of damages the United States Government has sustained because of Defendant's false or fraudulent claims, plus the maximum civil penalty for each violation of 31 U.S.C. §3729.

c.     That Plaintiff-Relators be awarded the maximum amount allowed pursuant to §3730(d), and all relief to which they are entitled pursuant to §3730(h) of the False Claims Act.

d.     That Plaintiff-Relators be awarded all costs of this action, including expert witness fees, attorneys' fees, and court costs.

e.     That Plaintiff-Relators recover such other relief as this Honorable Court deems just and proper.

Dated:  February 22, 2011

Respectfully submitted,

NANCY HERSH, ESQUIRE
MARK E. BURTON, JR., ESQUIRE
**HERSH & HERSH**
A Professional Corporation
601 Van Ness Avenue, Suite 2080
San Francisco, CA  94102-6316
Telephone: (415) 441-5544
Facsimile: (415) 441-7586

ATTORNEYS FOR PLAINTIFFS

- 28 -

FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED

## PROOF OF SERVICE

I, Portland Grant, declare:

I am employed in the City and County of San Francisco, California.

I am over the age of 18 years and not a party to the within cause; my business address is 601 Van Ness Avenue, Suite 2080, San Francisco, California 94102-6396. On February 22, 2011, I served the following document described as:

***FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED (FILED IN CAMERA AND UNDER SEAL)***

in said action by placing a true copy thereof, enclosed in a sealed envelope, each envelope addressed as follows:

André Birotte Jr.
U.S. Attorney
Leon W. Weidman
Assistant U.S. Attorney
Chief, Civil Division
Gary Plessman
Assistant U.S. Attorney
Chief, Civil Fraud Section
Susan R. Hershman
Assistant U.S. Attorney
Deputy Chief, Civil Fraud Section
Shana T. Mintz
Assistant U.S. Attorney
Federal Building, Room 7516
300 North Los Angeles Street
Los Angeles, CA 90012
 (213) 894-4756
FAX: (213) 894-2380
Attorneys for the United States of America

Eric H. Holder, Jr.                    *Courtesy Copy*
Attorney General of the United States
Attn: Joyce Branda
Executive Office for United States Attorneys
United States Department of Justice
950 Pennsylvania Avenue, NW, Room 2242
Washington, DC 20530-0001

__X__   **(BY U.S. MAIL, FIRST CLASS POSTAGE PREPAID)**   I caused each such envelope, with postage thereon fully prepaid, to be placed in the United States mail at San Francisco, California.

____   **(BY PERSONAL SERVICE)**   I delivered such envelope by hand to the addressee listed above.

____   **(BY OVERNIGHT DELIVERY)** I placed a true and correct copy of the document(s) listed above enclosed in a sealed envelope(s), and causing said envelope to be delivered to an overnight delivery carrier with delivery fees provided for, addressed to the person(s) on whom it is to be served.

____   **(BY FAX)** I transmitted via facsimile the document(s) listed above to the fax number(s) set forth above on this date before 5:00 p.m.

I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed February 22, 2011, at San Francisco, California.

PORTLAND GRANT

HERSH AND HERSH
A Professional Corporation

Exhibit A



# CUSTOMER FEEDBACK


1022's

| Employee Documenting Feedback | Date of Feedback | Customer Information | | |
|---|---|---|---|---|
| Mike Ruhe | 6/30/10 | **Company/Institution Name**  Dr. Schwartz – Banning Location | | |

| Type of Feedback | How Communicated | **Address:** 264 N. Highland, Ste. 1-A  Banning, CA 92220 |
|---|---|---|

| | | |
|---|---|---|
| ☒ Customer Complaint | ☒ Verbal | **E-mail** |
| ☐ Masimo Service | ☐ Written | **Phone** (951)769-7191 |
| ☐ New Product/ Product Improvement | ☐ Email | **FAX** |
| ☐ Other | ☐ Other | **Contact & Department:**  Erma Cabello or Dr. Schwartz or Dr. Dong |

**Is Return Material Authorization required?**   ☒ Yes, follow instructions below ☐ No

### RMA # XXXXX
**SHIP TO:**
Masimo Corporation
Attn: RMA Department
40 Parker
Irvine, CA 92618  USA
Tel: 1 800 326-4890, option #2
Email tech@masimo.com

**PLEASE ENSURE ALL PRODUCTS ARE BIO HAZARD CLEANED!!!**

1. Please contact Technical Support to request an RMA number prior to returning product.
2. Complete this form.
3. Return this form with the product by affixing to the outside of the container with a clear shipper.

| Details of Feedback  Note: If feedback is regarding a new product or product improvement idea, disregard following fields and forward to Marketing for evaluation | Device consistently takes >3 min for Hb reading, and w/o illumination of SIQ light. Also, many tests result in dashes, w/o SIQ light | | |
|---|---|---|---|
| | ☐ Check if more detail attached | ☐ Check if more detail attached | ☐ Check if more detail attached |
| Product Part # | 21762 | | |
| Lot #/Serial #/ | 721226 | | |
| Quantity | 1 | | |
| Does feedback classify as complaint? (Completed by Masimo) | ☐ Yes ☐ No  If Yes, assign complaint number and fill out page 2 of this form  **Complaint #:** | ☐ Yes ☐ No  If Yes, assign complaint number and fill out page 2 of this form  **Complaint #:** | ☐ Yes ☐ No  If Yes, assign complaint number and fill out page 2 of this form  **Complaint #:** |
| Details of Feedback  Note: If feedback is regarding a new product or product improvement idea, disregard following fields and forward to Marketing for evaluation | | | |
| | ☐ Check if more detail attached | ☐ Check if more detail attached | ☐ Check if more detail attached |
| Product Part # | | | |
| Lot #/Serial #/ | | | |
| Quantity | | | |
| Does feedback classify as complaint? (Completed by Masimo) | ☐ Yes ☐ No  If Yes, assign complaint number and fill out page 2 of this form  **Complaint #:** | ☐ Yes ☐ No  If Yes, assign complaint number and fill out page 2 of this form  **Complaint #:** | ☐ Yes ☐ No  If Yes, assign complaint number and fill out page 2 of this form  **Complaint #:** |

CONFIDENTIAL AND PROPRIETARY
© 2007 Masimo Corporation (Unpublished)
All Rights Reserved

DRO Number - 18471

FRM-1022 Rev F

# MASIMO

## CUSTOMER FEEDBACK

| Employee Documenting Feedback | Date of Feedback | Customer Information | |
|---|---|---|---|
| Mike Ruhe | 6/30/10 | **Company/Institution Name**  Dr. Stanley Schwartz | |
| | | **Address:** | 12980 Frederick St., Ste. I  Moreno Valley, CA  92553 |
| **Type of Feedback** | **How Communicated** | | |
| ☒ Customer Complaint | ☒ Verbal | **E-mail** | |
| ☐ Masimo Service | ☐ Written | **Phone** | 714-541-8883 |
| ☐ New Product/ Product Improvement | ☐ Email | **FAX** | |
| ☐ Other | ☐ Other | **Contact & Department:**  Dr. McKenna or Dr. Tran | |

| Is Return Material Authorization required? | ☒ Yes, follow instructions below  ☐ No |
|---|---|

**RMA # XXXXX**
SHIP TO:
Masimo Corporation
Attn: RMA Department
40 Parker
Irvine, CA 92618   USA
Tel:  1 800 326-4890, option #2
Email  tech@masimo.com

**PLEASE ENSURE ALL PRODUCTS ARE BIO HAZARD CLEANED!!!**

1. Please contact Technical Support to request an RMA number prior to returning product.
2. Complete this form.
3. Return this form with the product by affixing to the outside of the container with a clear shipper.

| Details of Feedback  *Note: if feedback is regarding a new product or product improvement idea, disregard following fields and forward to Marketing for evaluation.* | Dr. Schwartz and Dr. Dong have experienced multiple inaccuracies as compared to lab values—two measurements as much as >4.0 g/dL off the mark.  Also, an 'unreasonable' portion (approx one-third) of pts tested had such low PI that he couldn't get an Hb reading.  It's consistently hot in Moreno Valley—so finger temperature is not the issue. In addition, many tests resulted in dashes after long wait, and no SIQ light.  Also, pediatric ROS became inoperative after about 10-15 tests.  Lastly, device consistently took >3 min for Hb reading, and w/o illumination of SIQ light. | | |
|---|---|---|---|
| | ☐ Check if more detail attached | ☐ Check if more detail attached | ☐ Check if more detail attached |
| **Product Part #** | 21762 | | |
| **Lot #/Serial #** | 721228 | | |
| **Quantity** | 1 | | |
| **Does feedback classify as complaint?**  *Completed by Masimo* | ☐ Yes  ☐ No  If Yes, assign complaint number and fill out page 2 of this form  **Complaint #:_____** | ☐ Yes  ☐ No  If Yes, assign complaint number and fill out page 2 of this form  **Complaint #:_____** | ☐ Yes  ☐ No  If Yes, assign complaint number and fill out page 2 of this form  **Complaint #:_____** |

CONFIDENTIAL AND PROPRIETARY
© 2007 Masimo Corporation (Unpublished)
All Rights Reserved

DRO Number - 18471

FRM-1022 Rev F

# MASIMO

# CUSTOMER FEEDBACK

| Employee Documenting Feedback | Date of Feedback | Customer Information | |
|---|---|---|---|
| Mike Ruhe | 6/29/10 | **Company/Institution Name** | Southland Urgent & Family Care |
| **Type of Feedback** | **How Communicated** | **Address:** 27660 Santa Margarita Pkwy Mission Viejo, CA 92691 | |
| ☒ Customer Complaint | ☒ Verbal | **E-mail** | |
| ☐ Masimo Service | ☐ Written | **Phone** | (949)951-7111 |
| ☐ New Product/ Product Improvement | ☐ Email | **FAX** | |
| ☐ Other | ☐ Other | **Contact & Department:** Bill Clark and Dr. Melahoures | |

**Is Return Material Authorization required?**   ☒ Yes follow instructions below ☐ No

## RMA # XXXXX

**SHIP TO:**
Masimo Corporation
Attn: RMA Department
40 Parker
Irvine, CA 92618   USA
Tel: 1 800 326-4890, option #2
Email tech@masimo.com

**PLEASE ENSURE ALL PRODUCTS ARE BIO HAZARD CLEANED!!!**

1. Please contact Technical Support to request an RMA number prior to returning product.
2. Complete this form.
3. Return this form with the product by affixing to the outside of the container with a clear shipper.

| Details of Feedback | | | |
|---|---|---|---|
| Note: If feedback regarding a new product or product improvement then disregard following fields and forward to Marketing for evaluation. | Device consistently taking >3.0 min for reading, and without SIQ light ever illuminating. Also test attempts often result in dashes without SIQ light ever illuminating. | | |
| | ☐ Check if more detail attached | ☐ Check if more detail attached | ☐ Check if more detail attached |
| Product Part # | 21762 | | |
| Lot #/Serial #/ | 721196 | | |
| Quantity | 1 | | |
| Does feedback classify as complaint? | ☐ Yes ☐ No If Yes, assign complaint number and fill out page 2 of this form Complaint #:_____ | ☐ Yes ☐ No If Yes, assign complaint number and fill out page 2 of this form Complaint #:_____ | ☐ Yes ☐ No If Yes, assign complaint number and fill out page 2 of this form Complaint #:_____ |
| Details of Feedback | | | |
| Note: If feedback regarding a new product or product improvement then disregard following fields and forward to Marketing for evaluation. | | | |
| | ☐ Check if more detail attached | ☐ Check if more detail attached | ☐ Check if more detail attached |
| Product Part # | | | |
| Lot#/Serial # | | | |
| Quantity | | | |
| Does feedback classify as complaint? (Completed by Masimo) | ☐ Yes ☐ No If Yes, assign complaint number and fill out page 2 of this form Complaint #:_____ | ☐ Yes ☐ No If Yes, assign complaint number and fill out page 2 of this form Complaint #:_____ | ☐ Yes ☐ No If Yes, assign complaint number and fill out page 2 of this form Complaint #:_____ |

CONFIDENTIAL AND PROPRIETARY
© 2007 Masimo Corporation (Unpublished)
All Rights Reserved

DRO Number - 18471

FRM-1022 Rev F

# MASIMO

## CUSTOMER FEEDBACK

| Employee Documenting Feedback | Date of Feedback | Customer Information | |
|---|---|---|---|
| Mike Ruhe | 5/11/10 | **Company/Institution Name** | Pacific Pediatrics |
| | | **Address:** 17456 Beach Blvd, #101 Huntington Beach, CA 92647 | |

| Type of Feedback | How Communicated | | |
|---|---|---|---|
| Customer Complaint | ☒ Verbal | **E-mail** | |
| ☐ Masimo Service | ☐ Written | **Phone** | 714-847-8551 |
| x☐ New Product/ Product Improvement | ☐ Email | **FAX** | |
| ☐ Other | ☐ Other | **Contact & Department:** Patty or Claudia or Daisey | |

**Is Return Material Authorization required?** ☒ Yes; follow instructions below ☐ No

**RMA # XXXXX**
SHIP TO:
Masimo Corporation
Attn: RMA Department
40 Parker
Irvine, CA 92618 USA
Tel: 1 800 326-4890, option #2
Email tech@masimo.com

**PLEASE ENSURE ALL PRODUCTS ARE BIO HAZARD CLEANED!!!**

1. Please contact Technical Support to request an RMA number prior to returning product.
2. Complete this form.
3. Return this form with the product by affixing to the outside of the container with a clear shipper.

CONFIDENTIAL AND PROPRIETARY
© 2007 Masimo Corporation (Unpublished)
All Rights Reserved

DRO Number - 18471

FRM-1022 Rev F

# MASIMO

## CUSTOMER FEEDBACK

| Details of Feedback<br><br>Note: Feedback in regarding a new product or product improvement idea, disregard following fields and forward to Marketing for evaluation. | (Identical details to those submitted on another shipped device on same day—see 1022 Form titled "PacPeds I.") Subjects were all seated in docs office – standard lighting, all female subjects, no finger-nail polish or abnormalities.  Black bag was always applied over test finger.  Tested ring finger on left hand initially, then eventually tried all fingers on different hands to receive same intermittent results described below. SIQ light never illuminated.  Attached ROS and DOS to device and pressed SpHb button.  Device would display cycling zeros for 10 seconds or so, then display strong PI measurements of between 2.5 and 4.5 for about 10 seconds, then return to cycling zeros again and so-on.  This pattern continued for 3-4 minutes, until I'd retest.  Then the same process would often repeat itself, and I'd retest again. About half the time or less, I'd actually get a feasible Hb measurement between 13-17 g/dL.  I also tried both adult and ped ROS/DOS systems and received same results. | | |
| --- | --- | --- | --- |
| | ☐ Check if more detail attached | ☐ Check if more detail attached | ☐ Check if more detail attached |
| Product Part # | 9167 | 2406 | |
| Lot #/Serial #/ | 21762/720986 | | |
| Quantity | | | |
| Does feedback classify as complaint? (Completed by Masimo) | ☐ Yes  ☐ No<br>If Yes, assign complaint number and fill out page 2 of this form<br>**Complaint #:** | ☐ Yes  ☐ No<br>If Yes, assign complaint number and fill out page 2 of this form<br>**Complaint #:** | ☐ Yes  ☐ No<br>If Yes, assign complaint number and fill out page 2 of this form<br>**Complaint #:** |
| Details of Feedback<br><br>Note: Feedback in regarding a new product or product improvement idea, disregard following fields and forward to Marketing for evaluation. | | | |
| | ☐ Check if more detail attached | ☐ Check if more detail attached | ☐ Check if more detail attached |
| Product Part # | | | |
| Lot #/Serial #/ | | | |
| Quantity | | | |

CONFIDENTIAL AND PROPRIETARY
© 2007 Masimo Corporation (Unpublished)
All Rights Reserved

DRO Number - 18471

FRM-1022 Rev F

# MASIMO

## CUSTOMER FEEDBACK

| Employee Documenting Feedback | Date of Feedback | Customer Information | | |
|---|---|---|---|---|
| Mike Ruhe | May 11, 2010 | **Company/Institution Name** | Pacific Pediatrics | |
| | | **Address:** | 17456 Beach Blvd #101 Huntington Beach, CA  92647 | |
| **Type of Feedback** | **How Communicated** | | | |
| Customer Complaint | ☒ Verbal | **E-mail** | | |
| ☐ Masimo Service | ☐ Written | **Phone** | 714-847-8551 | |
| x☐ New Product/ Product Improvement | ☐ Email | **FAX** | | |
| ☐ Other | ☐ Other | **Contact & Department:** Claudia or Patty or Daisey | | |

| Is Return Material Authorization required? | ☒ Yes, follow instructions below ☐ No |
|---|---|

**RMA # XXXXX**
**SHIP TO:**
Masimo Corporation
Attn: RMA Department
40 Parker
Irvine, CA 92618   USA
Tel: 1 800 326-4890, option #2
Email  tech@masimo.com

**PLEASE ENSURE ALL PRODUCTS ARE BIO HAZARD CLEANED!!!**

1. Please contact Technical Support to request an RMA number prior to returning product.
2. Complete this form.
3. Return this form with the product by affixing to the outside of the container with a clear shipper.

CONFIDENTIAL AND PROPRIETARY
© 2007 Masimo Corporation (Unpublished)
All Rights Reserved

DRO Number - 18471

FRM-1022 Rev F

# MASIMO

## CUSTOMER FEEDBACK

| Details of Feedback | (Identical details to those submitted on another shipped | (see notes on left) | |
|---|---|---|---|
| Note: If feedback is regarding a new product or product improvement idea, disregard following fields and forward to Marketing for evaluation. | device on same day—see 1022 Form titled "PacPeds II.")  Subjects were all seated in docs office – standard lighting, all female subjects, no finger-nail polish or abnormalities.  Black bag was always applied over test finger.  Tested ring finger on left hand initially, then eventually tried all fingers on different hands to receive same intermittent results described below. SIQ light never illuminated.  Attached ROS and DOS to device and pressed SpHb button.  Device would display cycling zeros for 10 seconds or so, then display strong PI measurements of between 2.5 and 4.5 for about 10 seconds, then return to cycling zeros again and so-on.  This pattern continued for 3-4 minutes, until I'd retest.  Then the same process would often repeat itself, and I'd retest again. About half the time or less, I'd actually get a feasible Hb measurement between 13-17 g/dL. I also tried both adult and ped ROS/DOS systems and received same results. | | |
| | ☐ Check if more detail attached | ☐ Check if more detail attached | ☐ Check if more detail attached |
| Product Part # | 21762 | 2406 | |
| Lot #/Serial # | 715904 | 10D77 | |
| Quantity | 1 | 1 | |
| Does feedback classify as a complaint? (Complaint by Marcos) | ☐ Yes  x☐ No  If Yes, assign complaint number and fill out page 2 of this form  **Complaint #:** | ☐ Yes  ☐ No  If Yes, assign complaint number and fill out page 2 of this form  **Complaint #:_____** | ☐ Yes  ☐ No  If Yes, assign complaint number and fill out page 2 of this form  **Complaint #:_____** |
| Details of Feedback | | | |
| Note: If feedback is regarding a new product or product improvement idea, disregard following fields and forward to Marketing for evaluation. | | | |
| | ☐ Check if more detail attached | ☐ Check if more detail attached | ☐ Check if more detail attached |
| Product Part # | | | |
| Lot #/Serial # | | | |
| Quantity | | | |

CONFIDENTIAL AND PROPRIETARY
© 2007 Masimo Corporation (Unpublished)
All Rights Reserved

DRO Number - 18471

FRM-1022 Rev F

# MASIMO

## CUSTOMER FEEDBACK

| Employee Documenting Feedback | Date of Feedback | Customer Information | |
|---|---|---|---|
| Mike Ruhe | 6/24/10 | **Company/Institution Name** | Robert Lajvardi, MD |

| Type of Feedback | How Communicated | | |
|---|---|---|---|
| | | **Address:** | 7339 El Cajon Blvd<br>La Mesa, CA  91942 |
| ☒ Customer Complaint | ☒ Verbal | **E-mail** | |
| ☐ Masimo Service | ☐ Written | **Phone** | 619-460-7775 |
| ☐ New Product/<br>Product Improvement | ☐ Email | **FAX** | |
| ☐ Other | ☐ Other | **Contact & Department:**<br>Colleen Fetgatter, PA-C and Robert Lajvardi, MD | |

**Is Return Material Authorization required?**          ☐ Yes, follow instructions below      ☒ No

### RMA # XXXXX

**SHIP TO:**
Masimo Corporation
Attn: RMA Department
40 Parker
Irvine, CA 92618  USA
Tel:  1 800 326-4890, option #2
Email  tech@masimo.com

**PLEASE ENSURE ALL PRODUCTS ARE BIO HAZARD CLEANED!!!**

1. Please contact Technical Support to request an RMA number prior to returning product.
2. Complete this form.
3. Return this form with the product by affixing to the outside of the container with a clear shipper.

| Details of Feedback<br><br>*Note: If feedback is regarding a new product or product improvement detail, disregard following fields and forward to Marketing for evaluation.* | Client complained that Pronto device frequently takes 3-5 minutes to complete a test—only to end in dashes (and no Hb reading).  This happens despite strong PI measurements well above 2.0 and despite NO illumination of SIQ light. | Client complained that he frequently gets "replace sensor" warning on device when using same ROS and different DOS adhesives taken from same case of DOS.  Whenever he would get such a reading, he said he'd discard the DOS and replace with new ones one-after-another until eventually one would finally work properly. | Client complained that on two occasions during the third week of June he had tested patients using the Pronto and received anemic readings between 9.0 and 10.0 g/dL. In both cases he referred patients out to lab for stat Hb readings.  Lab values on both patients, which came back within several hours of Pronto reading, were NON-anemic—between 13.0 and 14.0 g/dL. In other words,  he received two gross false positives in the same week of use (between June 14 and June 18).  Both patients were young Caucasian males—with sno unusual characteristics or apparent reasons for incorrect Pronto readings. |
|---|---|---|---|
| | ☐ Check if more detail attached | ☐ Check if more detail attached | ☐ Check if more detail attached |
| **Product Part #** | 21762 | 21762 | 21762 |
| **Lot #/Serial #** | 720986 | 720986 | 720986 |
| **Quantity** | Numerous pts—same issue | Numerous pts—same issue | 2 pts—same issue |
| **Does feedback classify as complaint?** *(Completed by Masimo)* | ☐ Yes  ☐ No<br>If Yes, assign complaint number and fill out page 2 of this form<br>**Complaint #:**_____ | ☐ Yes  ☐ No<br>If Yes, assign complaint number and fill out page 2 of this form<br>**Complaint #:**_____ | ☐ Yes  ☐ No<br>If Yes, assign complaint number and fill out page 2 of this form<br>**Complaint #:**_____ |

---

CONFIDENTIAL AND PROPRIETARY
© 2007 Masimo Corporation (Unpublished)
All Rights Reserved

DRO Number - 18471

Page 1

FRM-1022 Rev F

# MASIMO

## CUSTOMER FEEDBACK

| Employee Documenting Feedback | Date of Feedback | Customer Information | |
|---|---|---|---|
| Mike Ruhe | 6/16/2010 | **Company/Institution Name** | HDPC – Hesperia, CA |
| **Type of Feedback** | **How Communicated** | **Address:** | 17073 Main St.<br>Hesperia, CA  92345 |
| ☒ Customer Complaint | ☒ Verbal | **E-mail** | |
| ☐ Masimo Service | ☐ Written | **Phone** | 760-956-4121 |
| ☐ New Product/ Product Improvement | ☐ Email | **FAX** | |
| x☐ Other – incident occurred off-site while doing a 'quality check' on product prior to in-office demonstration | x☐ Other – fortunately observed only by Masimo rep | **Contact & Department:**<br>Dr. Anunciacion Ando | |

| Is Return Material Authorization required? | | ☒ Yes, follow instructions below.  ☐ No |
|---|---|---|
| **RMA # XXXXX**<br>SHIP TO:<br>Masimo Corporation<br>Attn: RMA Department<br>40 Parker<br>Irvine, CA 92618  USA<br>Tel: 1 800 326-4890, option #2<br>Email  tech@masimo.com | | **PLEASE ENSURE ALL PRODUCTS ARE BIO HAZARD CLEANED!!!**<br><br>1. Please contact Technical Support to request an RMA number prior to returning product.<br>2. Complete this form.<br>3. Return this form with the product by affixing to the outside of the container with a clear shipper. |

| Details of Feedback | | | |
|---|---|---|---|
| Note: If feedback regarding a new product or product improvement idea, disregard following fields and forward to Marketing for evaluation | Tested myself twice on Pronto device #720928. (Seated in car with standard conditions. Ring finger, non-dominant hand, black bag over finger, caucasion w/ light pigmentation, adult resposable sensor, typical non-direct ambient lighting.) The first Hb reading was 17.1 g/dL and the second reading was 17.3 g/dL, which I know to be EXTREMELY high.  My Hb has never tested above 15.5 g/dL. So I tested myself twice on a different Pronto device (#721222) and got a reading of 15.2 and 15.4. Tested same ring finger on non-dominant hand, under identical conditions of originally tested Pronto device. | | |
| | ☐ Check if more detail attached | ☐ Check if more detail attached | ☐ Check if more detail attached |
| **Product Part #** | 21762 | | |
| **Lot #/Serial #** | #721222 and #720928 | | |
| **Quantity** | 2 | | |

CONFIDENTIAL AND PROPRIETARY<br>© 2007 Masimo Corporation (Unpublished)<br>All Rights Reserved

DRO Number - 18471

FRM-1022 Rev F

# MASIMO

## CUSTOMER FEEDBACK

| Employee Documenting Feedback | Date of Feedback | Customer Information | |
|---|---|---|---|
| Ruhe, Mike | 7/27/10 | **Company/Institution Name** | Teresita Barbadillo, MD |
| **Type of Feedback** | **How Communicated** | **Address:** | 655 S Euclid Ave<br>STE STE 201<br>National City, CA 91950 |
| ☒ Customer Complaint | ☒ Verbal | **E-mail** | |
| ☐ Masimo Service | ☐ Written | **Phone** | (619)267-8601 |
| ☐ New Product/<br>Product Improvement | ☐ Email | **FAX** | |
| ☐ Other | ☐ Other | **Contact & Department:**<br>**Dr. Teresita Barbadillo** | |

**Is Return Material Authorization required?**   ☒ Yes, follow instructions below   ☐ No

### RMA # XXXXX

**SHIP TO:**
Masimo Corporation
Attn: RMA Department
40 Parker
Irvine, CA 92618  USA
Tel: 1 800 326-4890, option #2
Email  tech@masimo.com

**PLEASE ENSURE ALL PRODUCTS ARE BIO HAZARD CLEANED!!!**

1. Please contact Technical Support to request an RMA number prior to returning product.
2. Complete this form.
3. Return this form with the product by affixing to the outside of the container with a clear shipper.

CONFIDENTIAL AND PROPRIETARY
© 2007 Masimo Corporation (Unpublished)
All Rights Reserved

DRO Number - 18471

FRM-1022 Rev F

# MASIMO

## CUSTOMER FEEDBACK

| Details of Feedback *Note: If feedback is regarding a new product or product improvement idea, disregard following fields and forward to Marketing for evaluation.* | Tested Dr. Barbadillo on P7 device no fewer than eight times, only to get the "Test Incomplete" message every time despite ideal testing environment/conditions . We (Kevin Hammond and myself) were not able to get a successful Hb reading at any point using sensor S/N A83F90000003265C, including testing on ourselves several times. (Oddly enough, the same sensor used on the same P7 device previously worked fine for the most part over the last couple weeks during numerous other demo opportunities.) We were prompted to check sensor site and check interference, which we did. However, an immediate scan each time indicated there was NO INTERFERENCE. And the sensor placement was correct. Dr. Barbadillo is a female Filipina with fair skin pigmentation. She was NOT wearing any fingernail polish and did NOT have acrylics. I replaced the sensor with another sensor S/N A83F9000000215C4 (using same P7 device) and we were able to test for Hb successfully several times in a row. | | |
|---|---|---|---|
| | ☐ Check if more detail attached | ☐ Check if more detail attached | ☐ Check if more detail attached |
| Product Part # | P7 Reusable 4D sensor | | |
| Lot #/Serial # | A83F90000003265C | | |
| Quantity | 1 | | |
| Does feedback classify as complaint? *(Complaint Definition)* | ☐ Yes  ☐ No  If Yes, assign complaint number and fill out page 2 of this form  Complaint #:_____ | ☐ Yes  ☐ No  If Yes, assign complaint number and fill out page 2 of this form  Complaint #:_____ | ☐ Yes  ☐ No  If Yes, assign complaint number and fill out page 2 of this form  Complaint #:_____ |
| Details of Feedback *Note: If feedback is regarding a new product or product improvement idea, disregard following fields and forward to Marketing for evaluation.* | | | |
| | ☐ Check if more detail attached | ☐ Check if more detail attached | ☐ Check if more detail attached |
| Product Part # | | | |
| Lot #/Serial # | | | |

CONFIDENTIAL AND PROPRIETARY
© 2007 Masimo Corporation (Unpublished)
All Rights Reserved

DRO Number - 18471

FRM-1022 Rev F

# MASIMO

## CUSTOMER FEEDBACK

| Employee Documenting Feedback | Date of Feedback | Customer Information | |
|---|---|---|---|
| Mike Ruhe | 6/17/2010 | **Company/Institution Name**   HDPC | |
| | | **Address:**   17073 Main St  Hesperia CA  92345 | |
| **Type of Feedback** | **How Communicated** | | |
| ☒ Customer Complaint | ☒ Verbal | **E-mail** | |
| ☐ Masimo Service | ☐ Written | **Phone** | 760-956-4121 |
| ☐ New Product/ Product Improvement | ☐ Email | **FAX** | |
| x☐ Other – issue during demonstration/in-service of customer's new Pronto device | ☐ Other | **Contact & Department:**  Dr. Anunciacion Ando | |

| Is Return Material Authorization required? | ☒ Yes: follow instructions below: ☐ No: |
|---|---|
| **RMA # XXXXX**  **SHIP TO:**  Masimo Corporation  Attn: RMA Department  40 Parker  Irvine, CA 92618  USA  Tel: 1 800 326-4890, option #2  Email  tech@masimo.com | **PLEASE ENSURE ALL PRODUCTS ARE BIO HAZARD CLEANED!!!**  1. Please contact Technical Support to request an RMA number prior to returning product.  2. Complete this form.  3. Return this form with the product by affixing to the outside of the container with a clear shipper. |

| Details of Feedback  Note: If feedback is regarding a new product or product improvement idea, disregard following fields and forward to Marketing for evaluation. | Tested device on my own finger. Ring finger non-dominant hand, light pigmentation, adult resposable sensor.  I was seated, standard lighting, ambient room temperature about 75 degrees, nothing atypical about environment. Strong PI over 7.0, no SIQ light. Tested myself three times in a row, all three times device took well over three minutes cycling the PI, SP02 & PR as normal, however ended in dashes without ever displaying an Hb measurement. | | |
|---|---|---|---|
| | x☐ Check if more detail attached | ☐ Check if more detail attached | ☐ Check if more detail attached |
| **Product Part#** | 21762 | | |
| **Lot #/Serial #** | 721227 | | |
| **Quantity** | 1 | | |
| **Does feedback classify as complaint?** (Completed by Masimo) | x☐ Yes ☐ No  If Yes, assign complaint number and fill out page 2 of this form  **Complaint #:** | ☐ Yes ☐No  If Yes, assign complaint number and fill out page 2 of this form  **Complaint #:** | ☐ Yes ☐ No  If Yes, assign complaint number and fill out page 2 of this form  **Complaint #:** |
| **Details of new Feedback**  Note: If feedback is regarding a new product or product improvement idea, disregard following | | | |

CONFIDENTIAL AND PROPRIETARY  
© 2007 Masimo Corporation (Unpublished)  
All Rights Reserved

DRO Number - 18471

FRM-1022 Rev F

# MASIMO

## CUSTOMER FEEDBACK

| Employee Documenting Feedback | Date of Feedback | Customer Information | |
|---|---|---|---|
| Ruhe, Mike | 6/23/10 | **Company/Institution Name** | Tran Medical Clinic |

| | | **Address:** | 1714 North Bush Street<br>Santa Ana, CA 92706-2812 |
|---|---|---|---|
| **Type of Feedback** | **How Communicated** | | |
| ☒ Customer Complaint | ☒ Verbal | **E-mail** | |
| ☐ Masimo Service | ☐ Written | **Phone** | (714) 541-8883 |
| ☐ New Product/<br>Product Improvement | ☐ Email | **FAX** | |
| ☐ Other | ☐ Other | **Contact & Department:**<br>Dr. Ahn Tran & Dr. McKenna (FP/GP) | |

**Is Return Material Authorization required?**  ☒ Yes, follow instructions below  ☐ No

### RMA # XXXXX

**SHIP TO:**
Masimo Corporation
Attn: RMA Department
40 Parker
Irvine, CA 92618  USA
Tel: 1 800 326-4890, option #2
Email  tech@masimo.com

**PLEASE ENSURE ALL PRODUCTS ARE BIO HAZARD CLEANED!!!**

1. Please contact Technical Support to request an RMA number prior to returning product.
2. Complete this form.
3. Return this form with the product by affixing to the outside of the container with a clear shipper.

| Details of Feedback<br>(Note: if feedback is regarding a new product or product improvement idea disregard following fields and forward to Marketing for evaluation) | I assisted Dr. Tran and Dr. McKenna June 22nd with testing a male pediatric patient approximately (45 lbs) with Pronto device & resposables (LOT #10EB7). Patient was Hispanic male, light skin, was seated and very still. Lighting and room conditions were very standard—no unusually bright lights or temperature concerns, etc. We were immediately prompted to 'replace sensor,' despite the fact we had just opened a new box of resposables (both ROS & DOS). So I opened a second box of pediatric resposables (LOT #10CD7) and re-tested the patient with a 'new' set of DOS and ROS from different box. We again were immediately prompted to 'replace sensor.' We tried changing DOS adhesives 3 times, with same result. | | |
|---|---|---|---|
| | ☐ Check if more detail attached | ☐ Check if more detail attached | ☐ Check if more detail attached |
| **Product Part #** | 21762 | 2968 | 2968 |
| **Lot #/Serial #/** | 720928 | 10EB7 | 10CD7 |
| **Quantity** | 1 | 1 | |

CONFIDENTIAL AND PROPRIETARY
© 2007 Masimo Corporation (Unpublished)
All Rights Reserved

DRO Number - 18471

FRM-1022 Rev F

# MASIMO

## CUSTOMER FEEDBACK

| Employee Documenting Feedback | Date of Feedback | Customer Information | |
|---|---|---|---|
| Ruhe, Mike | 9/29/10 | Company/Institution Name | Scripps Health |

| | | Address: | 3811 Valley Centre Dr.<br>San Diego, CA  92130 |
|---|---|---|---|

| Type of Feedback | How Communicated | | |
|---|---|---|---|
| ☒ Customer Complaint | ☒ Verbal | E-mail | |
| ☐ Masimo Service | ☐ Written | Phone | 858-764-3000 |
| ☐ New Product/ Product Improvement | ☐ Email | FAX | |
| ☐ Other | ☐ Other | Contact & Department:<br>Freyda Clark, NP - Internal Medicine Dept | |

**Is Return Material Authorization required?**   ☐ Yes, follow instructions below   ☒ No

### RMA # XXXXX
**SHIP TO:**
Masimo Corporation
Attn: RMA Department
40 Parker
Irvine, CA 92618  USA
Tel: 1 800 326-4890, option #2
Email  tech@masimo.com

**PLEASE ENSURE ALL PRODUCTS ARE BIO HAZARD CLEANED!!!**

1. Please contact Technical Support to request an RMA number prior to returning product.
2. Complete this form.
3. Return this form with the product by affixing to the outside of the container with a clear shipper.

| Details of Feedback<br>Note: all feedback regarding a new product or product improvement idea, disregard following fields and forward to Marketing for evaluation | John Birkle and I received feedback from Freyda Clark, (Nurse Practitioner at Scripps Carmel Valley Clinic) that she had tested one of her staff with our P-7 device.  She took two readings back-to-back on the same hand, different fingers and observed "there was a 3 g/dL difference in the two readings!"  Freyda then introduced John & I to the staff who's fingers had been tested; and we reviewed proper testing protocol with her attempting to trouble-shoot her complaint. | | |
|---|---|---|---|
| | ☐ Check if more detail attached | ☐ Check if more detail attached | ☐ Check if more detail attached |
| Product Part # | Pronto-7 | | |
| Lot #/Serial # | | | |
| Quantity | 1 | | |
| Does feedback classify as complaint?<br>(Completed by Quality) | ☐ Yes ☐ No<br>If Yes, assign complaint number and fill out page 2 of this form<br>Complaint #:_____ | ☐ Yes ☐ No<br>If Yes, assign complaint number and fill out page 2 of this form<br>Complaint #:_____ | ☐ Yes ☐ No<br>If Yes, assign complaint number and fill out page 2 of this form<br>Complaint #:_____ |
| Details of Feedback<br>Note: all feedback regarding a new product or product improvement idea, disregard following | | | |

CONFIDENTIAL AND PROPRIETARY
© 2007 Masimo Corporation (Unpublished)
All Rights Reserved

DRO Number - 18471

FRM-1022 Rev F

# MASIMO

## CUSTOMER FEEDBACK

| Employee Documenting Feedback | Date of Feedback | Customer Information | |
|---|---|---|---|
| Ruhe, Mike | 9/28/10 | **Company/Institution Name** | Scripps Health |

| Type of Feedback | How Communicated | | |
|---|---|---|---|
| ☒ Customer Complaint | ☒ Verbal | **E-mail** | |
| ☐ Masimo Service | ☐ Written | **Phone** | 858-764-3000 |
| ☐ New Product/ Product Improvement | ☐ Email | **FAX** | |
| ☐ Other | ☐ Other | **Contact & Department:** Erin Morton, Supply Chain Operations Manager | |

**Address:** 3811 Valley Centre Dr. San Diego, CA  92130

**Is Return Material Authorization required?**   ☒ Yes, follow instructions below   ☐ No

### RMA # XXXXX

SHIP TO:
Masimo Corporation
Attn: RMA Department
40 Parker
Irvine, CA 92618  USA
Tel: 1 800 326-4890, option #2
Email tech@masimo.com

**PLEASE ENSURE ALL PRODUCTS ARE BIO HAZARD CLEANED!!!**

1. Please contact Technical Support to request an RMA number prior to returning product.
2. Complete this form.
3. Return this form with the product by affixing to the outside of the container with a clear shipper.

| Details of Feedback | | | |
|---|---|---|---|
| *Note: all feedback regarding a new product or product improvement idea, disregard following fields and forward to Marketing for evaluation* | John Birkle and I tested Erin's ring finger on non-dominant hand. He was seated w/ hand at heart level, warm hand. For no apparent reason, device could not get a reading. "Incomplete test" message kept came up five times in a row.  So we tried another P-7 device, which got an Hb measurement successfully. | | |
| | ☐ Check if more detail attached | ☐ Check if more detail attached | ☐ Check if more detail attached |
| **Product Part#** | Pronto-7 | | |
| **Lot #/Serial #** | 32e2 3000 0001 394b | | |
| **Quantity** | 1 | | |
| **Does feedback classify as a complaint?** *(Completed by Masimo)* | ☐ Yes ☐ No  If Yes, assign complaint number and fill out page 2 of this form  **Complaint #:_____** | ☐ Yes ☐ No  If Yes, assign complaint number and fill out page 2 of this form  **Complaint #:_____** | ☐ Yes ☐ No  If Yes, assign complaint number and fill out page 2 of this form  **Complaint #:_____** |
| **Details of Feedback** *Note: all feedback regarding a new product or product improvement idea, disregard following fields and forward to Marketing for evaluation* | | | |
| | ☐ Check if more detail attached | ☐ Check if more detail attached | ☐ Check if more detail attached |
| **Product Part#** | | | |
| **Lot #/Serial #** | | | |
| **Quantity** | | | |

CONFIDENTIAL AND PROPRIETARY
© 2007 Masimo Corporation (Unpublished)
All Rights Reserved

DRO Number - 18471

FRM-1022 Rev F