STUART F. DELERY
Acting Attorney General
ANDRÉ BIROTTE JR.
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division
WENDY L. WEISS
Assistant United States Attorney
Chief, Civil Fraud Section
SUSAN R. HERSHMAN
Assistant United States Attorney
Deputy Chief, Civil Fraud Section
SHANA T. MINTZ
Assistant United States Attorney
California Bar Number: 175147
    Federal Building, Room 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-4756
    Facsimile: (213) 894-2380
    shana.mintz@usdoj.gov

JOYCE R. BRANDA
JAMIE ANN YAVELBERG
MELISSA R. HANDRIGAN
Attorneys, Civil Division
United States Department of Justice
    P.O. Box 261, Ben Franklin Station
    Washington, D.C. 20044

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA, ex rel. MICHAEL RUHE, VICENTE CATALA and KRISTINE SERWITZ,**<br><br>    Plaintiffs,<br><br>    v.<br><br>**MASIMO CORPORATION,**<br><br>    Defendant. | Case No. CV 10-8169 CJC(JCGx)<br><br>**STATEMENT OF INTEREST BY THE UNITED STATES OF AMERICA IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>DATE:    June 4, 2012<br>TIME:    1:30 P.M.<br>PLACE:    Courtroom 9B |

The United States submits this Statement of Interest pursuant to 28 U.S.C. § 517, in response to the Motion to Dismiss First Amended Complaint filed by defendant Masimo Corporation. This brief does not take a position on the merits of Masimo's motion or the merits of the qui tam plaintiffs' action. Rather, it addresses certain statements and arguments made by the parties in their briefing papers regarding the proper elements of a case under the federal False Claims Act (31 U.S.C. § 3729 et seq. ("FCA")) that the government believes are incorrect or require clarification.

I.  THE GOVERNMENT'S INTEREST IN THIS CASE

Although the government declined to intervene in this action, because rulings in the case could affect the government's ability to bring future FCA cases, the government has a continuing interest in this case. The FCA is the government's principal tool for fighting fraud in government programs, and the government is thus concerned that the FCA be interpreted in a manner consistent with its language and purposes.

Masimo has moved to dismiss relators' claims for failure to plead with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. The United States requests that, if the Court dismisses the amended complaint under Rule 9(b), that such dismissal be without prejudice to the United States.

Masimo has also moved in the alternative to dismiss relators' claims under Federal Rule 12(b)(6) for failure to plead a cognizable legal theory under the FCA. They argue, incorrectly, that relators' claims must fit into certain tightly defined constructs, such as "false certification" or "promissory fraud," in order to assert a viable FCA claim. Relators do not dispute that

position in their opposition. Thus, the government submits this statement of interest to assist the Court in properly framing the substantive FCA standards to which relators' amended complaint should be held on Masimo's motion to dismiss.

## II. ANY DISMISSAL SHOULD BE WITHOUT PREJUDICE TO THE UNITED STATES

If the Court dismisses relators' amended complaint under Rule 9(b), the dismissal should be without prejudice to the United States. Pursuant to the FCA, a relator files his complaint on behalf of the United States, and once the United States has notified the Court that it declines to intervene, the relator is free to pursue the case on his own. 31 U.S.C. § 3730. Under such circumstances, the United States neither files the complaint that initiated the action nor serves the complaint on the defendant. Because the United States has no part in preparing such complaints, it should not be prejudiced if a relator has failed to plead the allegations sufficiently. Such a dismissal does not constitute a ruling on the merits, and does not mean that a better informed relator or the United States could not make out a viable claim in the future.

Moreover, a dismissal with prejudice would be unfair because a relator's complaint that is broadly drafted, if dismissed with prejudice as to the United States, could improperly be argued by a defendant to have the preclusive effect of preventing future actions by the United States against the defendant for conduct that the United States did not investigate and did not know was part of the relator's action. This is not in accord with the purpose of the False Claims Act qui tam provisions, which is assisting the United States in pursuing fraud, not hindering it, and should not

be the result of the dismissal of an improperly pleaded complaint by a relator whom the United States does not control. See United States ex rel. Williams v. Bell Helicopter Textron Inc., 417 F.3d 450, 455 (5th Cir. 2005) (dismissal with prejudice as to the United States was improper where basis for dismissal was failure to meet pleading standard under FRCP 9(b)). Accordingly, the United States submits that, if granted, any dismissal under Rule 9(b) should be without prejudice to the United States.  If the Court dismisses relators' claims under Rule 9(b), it need not address Masimo's alternative request that relators' claims be dismissed under Federal Rule 12(b)(6).

## III. THE FCA BROADLY APPLIES TO KNOWINGLY FALSE STATEMENTS AND FRAUDULENT COURSES OF CONDUCT RESULTING IN FALSE CLAIMS

The FCA "reaches beyond 'claims' which might be legally enforced, to all fraudulent attempts to cause the Government to pay out sums of money." United States v. Neifert-White Co., 390 U.S. 228, 233 (1968). In enacting the FCA, "Congress wrote expansively, meaning 'to reach all types of fraud, without qualification, that might result in financial loss to the Government.'" Cook County v. United States ex rel. Chandler, 538 U.S. 119, 129 (2003) (quoting Neifert-White, 390 U.S. at 233); see also United States ex rel. Hendow v. Univ. of Phoenix, 461 F.3d 1166, 1174 (9th Cir. 2006); Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 (4th Cir. 1999) ("any time a false statement is made in a transaction involving a call on the U.S. fisc, FCA liability may attach").

In asserting that relators' amended complaint does not adequately plead an actual "false claim," Masimo argues that they must fall into certain narrow categories – for example, that Masimo

3

must plead "false certification" or "promissory fraud." Masimo Memo. at 13, 15. Such arguments seek to create an unduly restrictive view of the FCA, and are at odds with the broad reach of the statute and the case law relevant to Masimo's alleged misconduct. The Supreme Court has stated that:

> [i]n the various contexts in which questions of the proper construction of the Act have been presented, the Court has consistently refused to accept a rigid, restrictive reading, even at the time when the statute imposed criminal sanctions as well as civil.

Neifert-White, 390 U.S. at 232. As a result, it is not necessary to categorize such conduct rigidly within the particular legal constructs upon which Masimo insists.

This point was recently underscored in United States ex rel. Hutcheson v. Blackstone Medical, Inc., 647 F.3d 377 (1st Cir. 2011), where the First Circuit rejected the contention that a claim could be found false only under a certification theory of liability. In that case, the relator alleged that the defendant had engaged in a kickback scheme to induce physicians to use the defendant's medical devices in spinal surgeries, for which false claims were made to the government. Id. at 378. The lower court dismissed the relator's claims, employing concepts such as "express certification" versus "implied certification," and "factual falsity" versus "legal falsity," among others.

The First Circuit, in reversing the lower court, declined to adopt "any categorical rules as to what counts as a materially false or fraudulent claim under the FCA." Id. at 380. The various court-created categories of FCA conduct, the Court noted, "may do

4

more to obscure than clarify the issues" in an FCA action.  Id. at 385-86.  The Court observed that:

> In the context of the FCA's lengthy history, which dates back to its enactment during the Civil War, . . . these judicially created formal categories are of relatively recent vintage. They have not been adopted by the Supreme Court or this court.

Id. at 385.  The Court further explained:

> Judicially-created categories sometimes can help carry out a statute's requirements, but they can also create artificial barriers that obscure and distort those requirements.  The text of the FCA does not refer to "factually false" or "legally false" claims, nor does it refer to "express certification" or "implied certification."  Indeed, it does not refer to "certification" at all.  *See United States ex rel. Hendow v. Univ. of Phoenix,* 461 F.3d 1166, 1172 (9th Cir.2006) (refusing to give the term "certification" a "paramount and talismanic significance" in part because it does not appear in the text of the FCA) ....

Id. at 385-86.

To be clear, the government does not contend that such categories should never be employed, or are never useful for analyzing an FCA action, if the facts fit, as they often do. Conduct that falls squarely within the parameters of such theories may presumptively be assumed to violate the FCA.  However, relators' FCA claims should not be judged solely by whether they properly fit a theory of "promissory fraud" or the other categories that Masimo seeks to impose.  Rather, the fundamental question is whether relators' allegations fit within the language and purpose

5

of the Act, which, as noted, was intended to reach "all types of fraud .. . that might result in financial loss to the government." Cook County, 538 U.S. at 129.

## IV. FRAUD UPON A GOVERNMENT AGENCY SUCH AS FDA CAN GIVE RISE TO A FALSE OR FRAUDULENT CLAIM UNDER THE FCA

Relators' amended complaint alleges that Masimo marketed and sold the Pronto devices, which were FDA-approved medical devices used to measure a patient's hemoglobin, that did not perform in accordance with the accuracy specifications set forth in the FDA-approved labels for the devices. According to relators, "Masimo made and continues to make claims that these devices can accurately measure hemoglobin and SpO2, despite knowing that the devices cannot measure hemoglobin or SpO2 to the accuracy claimed by Masimo." Am. Compl. ¶ 1. Relators allege that Masimo "represented that the device labeling was truthful, accurate and fair balanced, when in fact [it] knew those claims were false." Id. ¶ 80. The amended complaint also asserts that Masimo published "misleading, inaccurate data that was selected without any validated basis concerning the accuracy of these devices." Id. ¶ 1. Relators contend that the "Government Plaintiffs would not have funded non-invasive hemoglobin (SpHb) measurement testing but for Masimo's illegal representatives, marketing, and testing." Id. ¶ 6.

### A. False Statements or Misrepresentations That Are Material to Establishing Eligibility for Federal Reimbursement Can be Actionable under the FCA.

FCA liability can arise from a defendant's failure to disclose to the FDA information that would have been material to the agency's decision to approve or recall a medical device. Such determinations

6

bear directly on the safety, efficacy, and medical necessity of such devices. In such circumstances, the legal status of a product may have a nexus to the payment decision by the government.

It is well settled that fraudulent conduct material to eligibility for payment of federal funds can be actionable under the FCA. See, e.g., United States ex rel. Longhi v. Lithium Power Tech. Inc., 575 F.3d 458, 471-73 (5th Cir. 2009) (where the government was fraudulently induced to award a grant by material false statements on the grant application, every invoice submitted was a false claim); Hendow, 461 F.3d 1166 (defendant's false statements about its compliance with a ban on the payment of "incentive compensation" to recruiters, in order to obtain and maintain eligibility to receive education funds, were actionable under FCA); Harrison, 176 F.3d at 792-93 ("misrepresentations to the government about a matter material to the award of a contract" could violate the FCA).

This is true whether the false statements are made to the agency making the payment or to an agency or a third party whose approval or clearance is material to the government's payment decision. See, e.g., United States ex rel. Main v. Oakland City Univ., 426 F.3d 914, 916 (7th Cir. 2005) (the defendant's false statements material to eligibility for federal funds were actionable under FCA); United States v. Chapman University, 2006 WL 1562231, at *3 (C.D. Cal. May 23, 2006) (false statements to a regional accreditation authority and subsequent claims for federal loans and grants based on accreditation were actionable under FCA). The touchstone of FCA liability is whether the fraud "is integral to a causal chain leading to payment." Main, 426 F.3d at 916.

The FCA's legislative history confirms that it is intended to reach false statements that are material to a provider's eligibility for reimbursement. S. Rep. No. 345, 99th Cong., 2d Sess., at 9, reprinted in 1986 U.S.C.C.A.N. 5266, 5274 ("[C]laims may be false even though the services are provided as claimed if, for example, the claimant is ineligible to participate in the program.")

  B. <u>Because Federal Healthcare Programs Rely on the FDA's Assessment of Safety and Efficacy, Concealing Information from the FDA concerning Safety and Efficacy of a Device May Be Actionable under the FCA.</u>

In deciding whether to pay for a medical device (or services in which the device played an integral role), federal healthcare programs rely on the FDA's decision as to whether the device is sufficiently safe and effective to be sold in the United States. See, e.g., Diapulse Corp. of Am. v. Sebelius, 2010 U.S. Dist. LEXIS 25003, at *32-33 (E.D.N.Y. Jan. 21, 2010)(agreeing that "a device must receive FDA approval or clearance for at least one indication to be eligible for Medicare coverage"). Fraud on the FDA that was material to the agency's determination about whether a device could be sold, may, therefore, bear a sufficient nexus to the government's payment decision on that device to give rise to FCA liability.

Under the Food, Drug, and Cosmetics Act (FDCA), the FDA is the agency responsible for determining which medical devices may be legally sold within the United States. In making those determinations, the agency is charged with evaluating the safety and efficacy of such devices. To assess the safety and efficacy of a medical device, the agency relies on the manufacturer's compliance with its reporting obligations. When a device manufacturer

8

perpetrates a fraud on the FDA by hiding material information concerning the safety or efficacy of a medical device – either during the approval process or after the device has been approved – that fraud undermines the FDA's ability to exercise its regulatory authority, including to decide whether the device can be sold.

The question of whether a device can be legally sold begins, but does not end, with the initial approval process. The FDA maintains its oversight over the safety and efficacy of the device for as long as that device is offered for sale. After approving a device, the FDA may learn of dangers that the device poses that were not known at the time of the approval. The FDA may determine that those dangers are significant enough to initiate proceedings to withdraw the device's approval or to request a recall of the device.

When a manufacturer's fraud allows a device either to gain FDA approval or to avoid a recall and federal healthcare programs then pay for services in which that device was an integral part, that fraud was "integral to a causal chain leading to payment" and is actionable under the FCA. Main, 426 F.3d at 916.

C.  False Statements Need Not Be Express to Be Actionable.

A defendant's false statements need not be express to be actionable under The FCA. See, e.g., Hutcheson, 647 F.3d at 390 ("[T]he language of the FCA 'indicate[s] a purpose to reach any person who knowingly assisted in causing the government to pay claims which were grounded in fraud.'")(quoting United States ex rel Marcus v. Hess, 317 U.S. 537, 544-45 (1943)). A claim to a federal program is a representation that the claim is entitled to be paid. *Id.* at 379. The "falsity" of a claim therefore turns not on the express statements in the invoice, but on whether the claimant is

9

entitled to payment "in light of applicable law." <u>United States ex rel. Oliver v. The Parsons Co.</u>, 195 F.3d 457, 463 (9th Cir. 1999). A claim for payment to a federal healthcare program for services in which a medical device played an integral role is a representation that the device was eligible for payment. As described above, devices that are allowed to be sold only as a result of fraud upon the FDA are not entitled to payment and therefore claims involving those devices may be false under the FCA.

\*   \*   \*

In sum, relators' allegations that Masimo engaged in a fraudulent scheme that caused the government to pay for faulty medical devices (or services in which the faulty devices played an integral role) can state an actionable claim under the FCA, provided that relators have pled a sufficient nexus between the fraudulent scheme and the payment decision by the government, as described above. The United States takes no position on whether the relators have adequately pled facts sufficient to support that theory here.

Respectfully submitted,

DATED: May 21, 2012

ANDRÉ BIROTTE JR.
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division
WENDY L. WEISS
Assistant United States Attorney
Chief, Civil Fraud Section
SUSAN R. HERSHMAN
Assistant United States Attorney
Deputy Chief, Civil Fraud Section


    /S/   Shana T. Mintz
SHANA T. MINTZ
Assistant United States Attorney
Attorneys for the
United States of America

10