# TABLE OF AUTHORITIES

## CASES

Adams v. Gillaspie, C04-5551FDB, 2005 WL 2045878 (W.D. Wash. Aug. 24, 2005) ........................................................................................... 22

Anheuser-Busch, Inc. v. Natural Beverage Distributors, 69 F.3d 337, 348 (9th Cir.1995) ...................................................................................... 12

Childress v. Darby Lumber, Inc., 357 F.3d 1000 (9th Cir. 2004) ................... 12, 13

Dellums v. Powell, 566 F.2d 231 (D.C. Cir. 1977) ............................................. 16

Dukes v. Wal-Mart, Inc., 222 F.R.D. 189 (N.D. Cal. 2004) .................................. 9

Estate of Blas v. Winkler, 792 F.2d 858 (9th Cir. 1986) ...................................... 23

Fink v. Gomez, 239 F.3d 989 (9th Cir. 2001) ...................................................... 23

Galentine v. Holland Am. Line - Westours, Inc., 333 F. Supp. 2d 991 (W.D. Wash. 2004) ..................................................................................... 20, 22

Jayne H. Lee, Inc. v. Flagstaff Indus., 173 F.R.D. 651 (D. Md. 1997) ................... 4

Johnson v. Kraft Foods N. Am., Inc., 236 F.R.D. 535 (D. Kan. 2006) ................... 4

Kinetic Concepts, Inc. v. ConvaTec Inc., 268 F.R.D. 226 (M.D.N.C. 2010) ......... 4

Lanard Toys, Ltd. v. Novelty, Inc., 375 F. App'x 705 (9th Cir. 2010) .......... passim

Maionchi v. Union Pac. Corp., C 03-0647 JF PVT, 2007 WL 2022027 (N.D. Cal. July 9, 2007) ................................................................................ 10

Malone v. U.S. Postal Serv., 833 F.2d 128 (9th Cir. 1987) ............................ 17, 18

New Alaska Dev. Corp. v. Guetschow, 869 F.2d 1298 (9th Cir. 1989) .............. 24

Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo y Benefiencia de P.R., 248 F.3d 29 (1st Cir. 2001) .......................................................................... 23

Pacamor Bearings v. Minebea Co., 918 F. Supp. 491 (D.N.H. 1996) ................. 15

Paulissen v. U.S. Life Ins. Co., 205 F. Supp. 2d 1120 (C.D. Cal. 2002) .............. 16

Potlatch Corp. v. United States, 679 F.2d 153 (9th Cir. 1982) ..................... passim

U.S. use of Wiltec Guam, Inc. v. Kahaluu Constr. Co., 857 F.2d 600 (9th Cir. 1988) ........................................................................................... 19

Wendt v. Host Int'l, 125 F.3d 806 (9th Cir. 1997) ................................................. 9

White v. Meador, 215 F. Supp. 215 (D. Me. 2002) ............................................. 20

Winn v. AP, 903 F. Supp. 575 (S.D.N.Y. 1995) ...................................... 12

Wyle v. R.J. Reynolds Indus., 709 F.2d 585 (9th Cir. 1983) .............................. 12

Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101 (9th Cir. 2001) ... 21

Young v. Norfolk S. Ry. Co., CIV. A. 3:04-0397, 2005 WL 6011239 (S.D.W. Va.
June 3, 2005) .......................................................................... 15

## STATUTES & RULES

Fed. R. Civ. P. 26(a)(2)(B) ......................................................... 7, 15

Fed. R. Civ. P. 34(b)(2)(E) ............................................................ 5

Fed. R. Civ. P. 37(a)(4) .............................................................. 6, 7

Fed. R. Civ. P. 37(c) .......................................................... *passim*

28 U.S.C.A. § 1927 (West 2006) ................................................ *passim*

# TABLE OF CONTENTS

I.      INTRODUCTION .........................................................................................1

II.     BACKGROUND    THAT    CAUSED    THE    DELAY    WITH
        PLAINTIFFS' EXPERT REPORT..................................................................4

III.    LEGAL    STANDARD:    THE    TWO    EXCEPTIONS    UNDER
        RULE    37(c)(1)    THAT    PERMITS    PLAINTIFFS    TO    SUBMIT
        THEIR EXPERT REPORT AFTER THE DISCLOSURE DATE. .............9

IV.     THE COURT SHOULD ALLOW PLAINTIFFS' REPORT TO STAND
        BECAUSE DEFENDANT CAUSED THE DELAY BY CONCEALING
        EVIDENCE..................................................................................................10

        A.    Plaintiffs Were Substantially Justified in Submitting their Expert
              Report After the Disclosure Date Because Defendant caused the
        Delay by Withholding Critical Evidence the Experts Needed to
        Complete their Report.................................................................................10

        B.    Plaintiffs' Submission of their Expert Report 19 Days After the
              Disclosure Date is Harmless Because Defendant Has Not Been
              Prejudiced and Any Speculative Prejudice Can be Ameliorated
              Absent Defendant's Conduct Hereinafter to Fabricate Harm.....16

V.      DEFENSE COUNSEL SHOULD BE SANCTIONED FOR THEIR
        REPEATED DELAY TACTICS AND FRIVOLOUS AND BAD
        FAITH LITIGATION PRACTICES .........................................................23

VI.     CONCLUSION ..........................................................................................25

**PLAINTIFF-RELATORS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR LEAVE OF COURT TO SUBMIT EXPERT REPORT 19 DAYS AFTER DISCLOSURE DATE RESULTING FROM MASIMO WITHHOLDING EVIDENCE NEEDED TO COMPLETE REPORT AND REQUEST FOR SANCTIONS**

## I.   INTRODUCTION

Due to Defendant's discovery misconduct and the resultant delays Plaintiff-Relators experienced in getting data from third party agencies, Plaintiff-Relators seek leave to submit their expert report concerning damages to the United States government 19 days after the deadline in FRCP 26(a)(2)(D)(i).  Despite efforts to resolve this matter without involving the Court, Defendant refuses to accept the report and in effect, seeks the most severe sanction available under Rule 37(c)(1) – exclusion of the report.  Defendant's purported relief is unjustified for this particular report and therefore, Plaintiffs seek relief from this Court to allow the report.

Pursuant to FRCP 37(c)(1), the Court should allow Plaintiffs to submit their damages expert's report 19 after the FRCP 26 deadline, because there was substantial justification for the delay and the delay was harmless.  The Ninth Circuit has held that delayed production of an expert report is substantially justified where, as is the case here, the opposing party caused the delay by not being forthcoming with its discovery responses.

Plaintiff-Relators timely served Masimo with discovery requests seeking all documents evidencing Masimo's marketing and sale of its "SpHb" (noninvasive hemoglobin measurement) medical devices to various federal facilities and federally funded entities and programs. (Ex. 22, Plaintiff-Relators' Requests for Production, Set Two, at Request Nos. 9-11, 25-27, 93, and Special Interrogatory No. 14.) Masimo's responses and responsive documents were due June 24, 2013. As evidenced by the documents received by Plaintiff-Relators pursuant to various

1

subpoenas duces tecum served on various federal entities and other federally-funded third parties, it has become clear that Defendant withheld documents responsive to these requests in violation of FRCP 34(b)(2)(E).

Documents produced from third-parties over the past several weeks, as recently as August 14, 2013, show Defendant concealed evidence regarding relevant data concerning federally funded sales in this case. (*See*, *e.g*, Ex. 14 (documents detailing $175,000 in Masimo sales to Maine WIC that Masimo did not disclose despite timely discovery requests); Ex. 15 (documents detailing $90,500 in Masimo sales to Utah WIC that Masimo did not produce); Ex. 16, (same, from Federal Food and Nutrition Service.) Conspicuously present at the top left corner of the sales invoices produced by third parties is Masimo's logo and "Masimo" printed letterhead, demonstrating these are Masimo's invoice slips (*i.e.*, Masimo cannot contend credibly that it does not have possession of its own sales invoices). (*See*, *e.g.*, Ex. 14 at 3-4, 8-44, 48-82, 85-86, 90-124; Ex. 15 at 9-15, 17-31, 33-36, 38-76, 94, 96-98, 103, 106, 108-117.) Defendant's withholding of evidence not only caused the delay of Plaintiffs' expert report and therefore satisfies the substantially justified requirement of Rule 37, but also constitutes sanctionable conduct.

Rule 37(c)(1) also permits expert report be submitted after the disclosure date if the delay is harmless. The central question under the relevant authorities is whether the harm can be ameliorated. If it can, then the ameliorating action should be taken to prevent the harm and the delayed disclosure of the expert report should be permitted.

During meet and confer communications, Defendant identified a list of hypothetical harms it may face resulting from the late disclosures. First, speculative potential harms are not injuries in fact. The drastic and most severe sanction of excluding Plaintiffs' expert report is not justified on speculative harms

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF-RELATORS' MOTION FOR LEAVE OF COURT TO SUBMIT EXPERT REPORT 19 DAYS AFTER DISCLOSURE DATE RESULTING FROM MASIMO WITHHOLDING EVIDENCE NEEDED TO COMPLETE REPORTS AND REQUEST FOR SANCTIONS**

that may never occur. Second, the 17-day delay does not in and of itself cause harm.

Indeed, the Ninth Circuit has reversed a district court ruling that excluded an expert on similar facts. There, the report were disclosed with 10 weeks to prepare for trial but the defendant had been familiar with the case and the issues for several months, and therefore the harm caused by late disclosure was not substantial enough to require exclusion of the expert testimony. *Potlatch Corp. v. United States*, 679 F.2d 153 (9th Cir. 1982).

The case at bar is even more compelling than the situation in *Potlatch Corp*. The Parties here have already litigated many of the factual issues surrounding Masimo's allegedly fraudulent conduct in an arbitration proceeding, the result of which is pending. The opinions presented merely support arguments Defendant has known about for years. Thus, the Defendant is familiar with the case and any harm from receiving the expert report 19 days late is minimal. Moreover, Defendant has had the underlying information for years. It knows what sales it made and therefore has greater access to calculating the figures Plaintiffs' expert seeks to establish. The only "harm" is Defendant learned 19 days later than scheduled that Plaintiffs do not know the full extent of Defendant's fraud on the government because Defendant has forced Plaintiffs to served dozens of subpoenas on federal agencies to figure out what Defendant already knows, at least in part – how many sales it made for purchases of its SpHb devices, tests, and sensors and for specific uses of its devices.

Plaintiffs made good faith efforts to meet and confer with Defendant to retrieve requested discovery materials. For months now, Defendant has refused to produce the needed documents, refused to respond to nearly a dozen meet and confer e-mails and phone calls, repeatedly dumped thousands of pages of unidentified, and yet still incomplete, documents onto Plaintiffs, all of which prevented Plaintiffs' expert report from being completed by the disclosure date.

3

Plaintiffs therefore respectfully request that this Honorable Court not impose the harshest sanctions available under Rule 37 and seek leave from this Court to submit the expert report of Danielle N. Atkins, PhD and W. David Bradford, PhD 19 days after the disclosure deadline, because the brief delay was substantially justified and harmless. Plaintiffs also request sanctions under 28 U.S.C.A. § 1927 for Defense counsels improper litigation and discovery conduct that necessitated this motion.

## II.   BACKGROUND THAT CAUSED THE DELAY WITH PLAINTIFFS' EXPERT REPORT

On May 24, 2013, more than five months before trial and more than two months before the date for expert disclosures, Plaintiffs served timely discovery that sought Defendant's sales data concerning damages. (Ex. 22, Pls'. Req. for Prod. Nos. 9-11, 19, 25-26, 93, and Inter. No. 14) (collectively, the "Requests").). Plaintiffs' Experts Dr. Bradford and Dr. Atkins needed that sales and damages information to produce their expert report.

On June 24, Defendant's responses were due but Defendant failed to produce or identify **a single document**.  Instead, Defendant served a 120 page packet of boilerplate  and unfounded objections with a promise to produce the documents at an undisclosed future date. Withholding documents and delaying production in this manner is entirely improper.[1]

_____

[1]       *See, e.g., Jayne H. Lee, Inc. v. Flagstaff Indus.*, 173 F.R.D. 651, 656 (D. Md. 1997) ("a response to a request for production of documents which merely promises to produce the requested documents at some unidentified time in the future, without offering a specific time, place and manner, is not a complete answer as required by Rule 34(b) and, therefore, pursuant to Rule 37(a)(3) is treated as a failure to answer or respond"); *Johnson v. Kraft Foods N. Am., Inc*., 236 F.R.D. 535, 541 (D. Kan. 2006) ("a party may not unilaterally withhold information or documents that are responsive to a discovery request by stating that 'all relevant, non-privileged' responsive information or documents have been, or will be, produced"); *Kinetic Concepts, Inc. v. ConvaTec Inc*., 268 F.R.D. 226, 247

4

On June 28, Plaintiffs hosted a meet and confer teleconference and the Parties discussed Defendant's refusal to respond to Requests concerning sales data. That same day, Defendant dumped more than 600 files totalling several thousand pages of unidentified documents onto a server for Plaintiffs.   Plaintiffs informed Defendant that very same day that its production violated of Fed. R. Civ. P. 34(b)(2)(E) because Defendant has been and continues to produce hundreds of thousands of documents without labelling "them to correspond to the categories in the requests." Fed. R. Civ. P. 34(b)(2)(E). (Ex. 1, pg. 1.) Defendant ignored Plaintiffs' meet and confer efforts and never responded.

Attempting to avoid burdening the Court with motions practice, Plaintiffs continued meeting and conferring. Only after continued diligent efforts by Plaintiffs, on July 1, 2013, Defendant stated it would produce "summary sales data."  (Ex. 2.)  Plaintiffs immediately responded that Defendant is not permitted to produce summaries of requested documents in place of the documents themselves.  (*Id*.)  Nothing in the Rules permits Defendant to unilaterally produce summaries of relevant, discoverable information in place of the documents and information actually requested via properly served discovery requests.  Defendant again ignored Plaintiffs' attempt to meet and confer and never responded.

Left with no other recourse, on July 5, 2013, Plaintiffs notified Defendant they would be seeking Court intervention and invited a telephone call to meet and confer on the past due responses concerning sales data. (Ex. 3). Defendant ignored Plaintiffs' attempt to meet and confer and never responded. On July 9, Plaintiffs filed their discovery motion on an ex-parte basis, which the Court denied.

On July 6, Plaintiffs again met and conferred with Defendant regarding its noncompliance with Fed. R. Civ. P. 34(b)(2)(E) prior to re-filing the discovery

---

(M.D.N.C. 2010) ("intention to make some production at an unspecified date of its own choosing… is not a complete answer as required by Rule 34(b) and, therefore, pursuant to Rule 37(a)(3) is treated as a failure to answer or respond.")

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF-RELATORS'
MOTION FOR LEAVE OF COURT TO SUBMIT EXPERT REPORT 19 DAYS AFTER DISCLOSURE
DATE RESULTING FROM MASIMO WITHHOLDING EVIDENCE NEEDED TO COMPLETE
REPORTS AND REQUEST FOR SANCTIONS**

motion under the usual timelines. (Ex. 4 at 5.) Defendant offered to meet and confer, but then withdrew that invitation. (*Id*. at 1-2.). Plaintiffs reached out and again offered to meet and confer. (*Id*.) Defendant ignored Plaintiffs' attempt to meet and confer and never responded.

Because the Court declined to hear Plaintiffs' discovery motion on an ex-parte basis, Plaintiffs proceeded to comply with the Joint Stipulation requirements of L.R. 37. Consequently, on July 15, Plaintiffs submitted to Defendant a L.R. 37-2.1 Joint Stipulation. (Ex. 5 at pg. 3.) On July 17, Defendant refused to complete its portion. (*Id*.)

On July 19, Plaintiffs repeated their request and in response, Defense counsel Jon M. Setoguchi of Atkinson, Andelson, Loya, Ruud & Romo requested that Plaintiffs' counsel Reza Davani contact Mr. Setoguchi on his cell phone to confer on the issue. (*Id*. at pg. 1.) As requested, Mr. Davani called Defense counsel on his cell phone to meet and confer (Ex. 6 (Mr. Davani's cell phone call history showing an outbound call to Mr. Setoguchi's cell phone on July 19 at 2:59 p.m.) *and* Ex. 5 at 1 (e-mail from Mr. Setoguchi wherein he provides his cell phone number)) and left a voice mail because the call was not answered. That voice message was ignored and never responded to by anyone on behalf of Defendant.

On July 19, Defendant dumped unidentified documents onto an online server. (Ex. 7 at 1-3.) On July 20, Plaintiffs asked Defendant what the documents were responses to, but, as has been the pattern for months, Defendant ignored Plaintiffs' attempt to meet and confer and never responded. (*Id*).

On July 22, Plaintiffs asked point blank if the documents were responses to the Requests concerning sales data, Defendant again ignored Plaintiffs' attempt to meet and confer and never responded. (*Id*.) On that same date, just days before expert disclosures were due, Defendant submitted its portion of the Stipulation wherein Defendant purported to identify the needed sales data. (Ex. 8 at 1.)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF-RELATORS' MOTION FOR LEAVE OF COURT TO SUBMIT EXPERT REPORT 19 DAYS AFTER DISCLOSURE DATE RESULTING FROM MASIMO WITHHOLDING EVIDENCE NEEDED TO COMPLETE REPORTS AND REQUEST FOR SANCTIONS**

1    In violation of Fed. R. Civ. P. 37(a)(4),[2] Defendant attempted to cure its
2  response deficiencies by identifying "exemplary" sales documents in place of all
3  such documents, thereby refusing to provide full and complete responses. (Ex. 9.)
4  Plaintiffs notified Defendant of this impropriety on July 26 and asked Defendant to
5  provide complete responses identifying or producing all the sales data by July 29.
6  (*Id.*) Once again, Defendant ignored Plaintiffs' attempt to meet and confer and
7  never responded.

8    On July 29, Defendant once more dumped unidentified documents onto a
9  shared server. (Ex. 10). Plaintiffs asked Defendant what these additional
10 documents were responses to and offered to meet and confer by telephone (*id*);
11 again, Defendant ignored Plaintiffs' attempt to meet and confer and never
12 responded.

13   On July 31, expert disclosures were due. On that date, Plaintiffs submitted to
14 Defendant the disclosure requirements of Fed. R. Civ. P. 26(a)(2)(B) that do not
15 concern a report, namely, the experts' curriculum vitaes, a list of their
16 qualifications and publications, a list of their representative cases, and a brief
17 statement of the subject matter on which they will provide expert testimony. Fed.
18 R. Civ. P. 26(a)(2)(B)(ii)-(iv). (Ex. 11.) The experts' compensation was omitted
19 from that disclosure but has since been disclosed, along with full report. (Ex. 25.)

20   On August 2, Plaintiffs initiated a met and confer regarding their expert
21 reports. (Ex. 12.) Plaintiffs noted their experts do not have the evidence they need
22 to draft reports and asked if there is a date by which Defendant would accept the
23 reports without the need for Plaintiffs to file the instant motion seeking leave of
24 Court.

25   Later that same day, Defendant submitted a responsive letter ("Def. Letter").

26
27
28

[2]    *Id.* ("an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.")

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF-RELATORS' MOTION FOR LEAVE OF COURT TO SUBMIT EXPERT REPORT 19 DAYS AFTER DISCLOSURE DATE RESULTING FROM MASIMO WITHHOLDING EVIDENCE NEEDED TO COMPLETE REPORTS AND REQUEST FOR SANCTIONS**

1   (Ex. 13.) Per that letter, Defendant objects to any expert report disclosed past the

2   July 31 disclosure date and believes a delay of even one day harms it, and stated

3   the delay was not substantially justified. (*Id.*)

4          Defendant's objection is surprising because documents produced from third

5   parties in response to subpoenas Plaintiffs issued have revealed Defendant has

6   withheld and is likely still withholding sales and damages evidence responsive to

7   Plaintiffs' Requests. (*See*, *e.g*, Ex. 14 (documents detailing $175,000 in Masimo

8   sales to Maine WIC that Masimo refused to produce); Ex. 15 (documents detailing

9   $90,500 in Masimo sales to Utah WIC that Masimo refused to produce; Ex. 16,

10  documents from the Federal Food and Nutrition Service documenting federal

11  monies appropriated to state and Indian Tribe WICs for purchase of Masimo

12  noninvasive hemoglobin testing devices.)   **The top left corner of the sales**

13  **invoices produced by third parties shows Masimo's logo and "Masimo"**

14  **printed letterhead, demonstrating these are Masimo's invoice slips (*i.e.*,**

15  **Masimo cannot contend credibly that it does not have possession of its own**

16  **sales invoices).** (*See*, *e.g.*, Ex. 14 at 3-4, 8-44, 48-82, 85-86, 90-124; Ex. 15 at 9-

17  15, 17-31, 33-36, 38-76, 94, 96-98, 103, 106, 108-117.)   These are select

18  examples. Numerous similar documents have been produced all bringing to light

19  Masimo's blatant refusal to produce critical evidence of marketing and sales to the

20  government.

21         Defendant consciously withheld most if not all of these sales and damages

22  documents and chose to not include an accounting of all that sales data in the

23  summary sales spreadsheets it produced. As a result, Plaintiffs were required to

24  wait until third parties produced documents in response to third party subpoenas to

25  obtain the evidence. Plaintiffs needed complete responses to the Requests seeking

26  sales data for their experts Danielle N. Atkins, Ph.D., and W. David Bradford,

27  Ph.D., to produce their expert report. As a direct result of Defendant withholding

28  and continuing to conceal this damages evidence, disclosure of Plaintiffs' expert

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF-RELATORS' MOTION FOR LEAVE OF COURT TO SUBMIT EXPERT REPORT 19 DAYS AFTER DISCLOSURE DATE RESULTING FROM MASIMO WITHHOLDING EVIDENCE NEEDED TO COMPLETE REPORTS AND REQUEST FOR SANCTIONS**

1   report was delayed.

2   **III.   LEGAL STANDARD: THE TWO EXCEPTIONS UNDER RULE**
3   **37(c)(1) THAT PERMITS PLAINTIFFS TO SUBMIT THEIR**
4   **EXPERT REPORT AFTER THE DISCLOSURE DATE.**

5   FRCP 37(c)(1) allows the Court to grant Plaintiffs permission to serve their
6   expert report 19 days after the disclosure deadline given that Defendant caused the
7   delay. That Rule states that Plaintiffs' non-compliance with the disclosure may be
8   permitted if the delay "was substantially justified or is harmless."

9   Indeed "Rule 37(c)(1) did not, however, strip the district courts of discretion
10  to allow expert testimony in appropriate circumstances; to the contrary, it contains
11  an express exception under which a failure timely to serve an expert report may be
12  excused if the failure was substantially justified or is harmless." *Lanard Toys, Ltd.*
13  *v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010).

14  There are a number of factors the Court should consider determining if the
15  either of the two exceptions apply. "Among the factors that may properly guide a
16  district court in determining whether a violation of a discovery deadline is justified
17  or harmless are: (1) prejudice or surprise to the party against whom the evidence is
18  offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of
19  disruption of the trial; and (4) bad faith or willfulness involved in not timely
20  disclosing the evidence." *Id.* The Ninth Circuit will consider several factors in
21  determining whether a district court's sanction was proper, and so those factors
22  bear mentioning here as well. Those factors include "the public policy favoring
23  disposition of cases on their merits [and] the availability of less drastic sanctions."
24  *Wendt v. Host Int'l*, 125 F.3d 806, 814 (9th Cir. 1997).[3]

25

26  _____

27  [3]   The *Wendt* Court listed 5 factors. The first 2 *Wendt* factors, expeditious
28  resolution of litigation and the Court's need to manage its docket, are encompassed
    by the third *Lanard* factor, "likelihood of disruption of trial date." The third *Wendt*

9

## IV.  THE COURT SHOULD ALLOW PLAINTIFFS' REPORT TO STAND BECAUSE DEFENDANT CAUSED THE DELAY BY CONCEALING EVIDENCE

"In order to exclude evidence under Rule 37(c)(1), the Court must find that the Rule 26(a) violation was ***both*** unjustified and prejudicial." *Dukes v. Wal-Mart, Inc.*, 222 F.R.D. 189, 195-96 (N.D. Cal. 2004) (emphasis added); *see also Maionchi v. Union Pac. Corp.*, C 03-0647 JF PVT, 2007 WL 2022027, at *1 (N.D. Cal. July 9, 2007) ("[e]xclusion of [expert] is thus appropriate only if Defendant was not substantially justified in disclosing him after the deadline for expert disclosures set in the scheduling order, and Plaintiffs were harmed by the delay") (emphasis in original). Thus, if Plaintiffs' disclosure of their experts' report 19 days after the deadline was ***either*** substantially justified ***or*** harmless, the report and testimony should be permitted after the disclosure date and not excluded. As discussed below, the delay was in fact substantially justified and harmless.

### A. Plaintiffs Were Substantially Justified in Submitting their Expert Report After the Disclosure Date Because Defendant caused the Delay by Withholding Critical Evidence the Experts Needed to Complete their Report

Plaintiffs should not be sanctioned for disclosing their expert report 19 days late because the delay was substantially justified. The 19-day delay is substantially justified because Defendant has withheld and is withholding evidence responsive to Plaintiffs' discovery requests concerning marketing and sales data that Plaintiffs' experts need to prepare their report. Specifically, full and complete responses to Pl. Req. for Prod. Nos. 9-11, 19, 25-26, and 93, and Inter. No. 14 (sales and marketing data concerning damages) (Ex. 22.)

---

factor, prejudice to the other party, is the same as the first *Lanard* factor, "prejudice or surprise to the party against whom the evidence is offered."

The requests for marketing and sales data were very simple. Defendant sold a product. A company that sells a product has sales receipts and an accounting of those sales. Plaintiffs served discovery requests asking for that sales data. Defendant danced around the issue and withheld it. Therefore, Plaintiffs issued numerous third-party subpoenas to retrieve the data.

After Plaintiffs issued those subpoenas, on July 19, 2013, Defendant produced "summary sales data" and on July 22 via the Joint Stipulation Defendant directed Plaintiffs to another unidentified "summary sales spreadsheet" that was previously produced. (Ex. 7 at 1-3; Ex. 8 at 1.)  Plaintiffs are aware that many WICs got the SpHb devices for free but paid for the tests and/or sensors.  (See Ex. 14-15.)  Suspiciously, Defendant's "summary" spreadsheets listed almost all WIC sales of devices, sensors, and tests as $0.00.

Subsequently, Plaintiffs received documents in response to the third-party subpoenas that reveal Defendant is concealing sales and damages evidence. (*See*, e.g., Exs. 14-16.) The "summary sales data" Defendant belatedly produced does not provide an accounting of all these sales. Most notably, Defendant has withheld records of its sales to WIC agencies across the country.  (See, e.g., Ex. 16, showing Food and Nutrition dollars to WIC in Utah, Tennessee, and several Indian Tribes including those in North Dakota and Wyoming.)  These are sales that unquestionably took place because Masimo boasts about these sales in its marketing materials. (*See, e.g.*, Ex. 17 (Masimo marketing material boasting that "18 States" WIC programs have purchased "824" Prontos and "1.1 Million" "noninvasive hemoglobin tests (SpHb)."))

Defendant has also refused to produce the actual sales and marketing documents requested in Plaintiff's timely discovery requests. Defendant cannot contend credibly that it does not have possession of its own sales invoices. It is incomprehensible that Defendant would consciously withhold these documents from production and send Plaintiffs on a fishing expedition to retrieve them from

11

third-parties. Those documents were needed for Plaintiffs damages and economic experts, Danielle N. Atkins, Ph.D., and W. David Bradford, Ph.D., to produce an expert report.

Despite its bad faith conduct and willful concealment of evidence being sanctionable,[4] Defendant has taken the position that Plaintiffs should be punished for delays Defendant caused by withholding evidence responsive to Plaintiffs discovery requests. (Ex. 13 pgs. 3-4 (two days after Plaintiffs' reports were due, Defendant stated that "Masimo will seek to strike under Rule 37(c) any declaration or report served after the deadline.")

The authority on this point is clear and there are several Ninth Circuit cases that emulate the facts of the instance case, all finding that an expert's delayed production of his or her Rule 26(a)(2)(B) report is substantially justified when the cause of delay is at least in part the opposing party's failure to produce evidence in response to discovery requests.

The facts of the first Ninth Circuit opinion, *Childress v. Darby Lumber, Inc*., 357 F.3d 1000 (9th Cir. 2004), are very similar to those in this case. In *Childress* the Ninth Circuit affirmed a district court's decision to not exclude an expert designation that did not include a report because the Defendant was not forthcoming in responding to discovery. The court noted that plaintiffs "did file a disclosure statement for [their expert], which lacked detail and specificity only because [defendant] had failed to provide documents during discovery." *Childress*,

---

[4]     *Wyle v. R.J. Reynolds Indus*., 709 F.2d 585, 591 (9th Cir. 1983) (affirming district court's dismissal of case and finding "that monetary sanctions would be insufficient because PFEL withheld 'the essential evidence needed to establish the true extent of its rebating' "); *Anheuser-Busch, Inc. v. Natural Beverage Distributors,* 69 F.3d 337, 348 (9th Cir.1995) (recognizing inherent power to dismiss counterclaim for concealing discovery documents); *Winn v. AP*, 903 F. Supp. 575, 580 (S.D.N.Y. 1995) (imposing sanctions for impeding discovery and willful noncompliance with document production).

12

1   357 F.3d at 1010. The "report was made available to [defendant] shortly after

2   plaintiffs received the relevant information from [defendant]." *Id*. The same

3   sequence of events took place here, Plaintiffs submitted timely expert designations

4   (Ex. 11), and subsequently produced the report (Ex. 25) once they received much

5   of the needed information from third-parties. Except here, Defendant maintains its

6   refusal to produce the needed sales information and Plaintiffs are still seeking the

7   sales evidence from third-parties.

8           Though the opinion's recitation of the underlying facts is sparse, the parties'

9   appellate briefs, supplied herewith as Exhibits 18 and 19, unveils the striking

10  similarity to the case at bar. Just as here, the *Childress* plaintiff's disclosure

11  identified the expert but "contains absolutely no opinions." (Ex. 18 at 2.) "The

12  disclosure was filed 12/1/99"[5] but the report was not submitted until nearly three

13  months later on "February 28, 2000." (Ex. 19 at pg. 2.) "[T]he same

14  documentation needed by [the expert to produce his report] and requested in

15  discovery pursuant to Rule 34 was requested pursuant to the subpoena duces

16  tecum." (*Id*.) This is the same exact course of action Plaintiffs took in this case

17  when Defendant refused to produce the requested information. First, Plaintiffs

18  served Rule 34 document requests. Then, Plaintiffs issued subpoenas duces tecum

19  requesting "the same documented needed by" Plaintiffs' experts to produce their

20  reports.

21          The *Childress* defendant argued "the case had been pending for nearly a

22  year," suggesting plaintiffs were at fault for not obtaining the needed discovery

23  sooner, just as Defendant has alleged in this case. (Ex. 18 at 3.) On these facts, the

24  Ninth Circuit found defendant's arguments unavailing and affirmed the district

25  court's refusal to exclude the tardy report that followed the initial designation.

26

27

28  [5]    (Ex. 18 pg. 3.)

Moreover, the Ninth Circuit in *Childress* excused reports that were nearly three months late. Here, Plaintiffs' experts' report is only 19 days late. As such, the Court should permit submission of the report and its use at trial.

In another Ninth Circuit opinion, *Potlatch Corp. v. United States*, 679 F.2d 153 (9th Cir. 1982), the Court of Appeals reversed a district court's decision to exclude an expert whose report was served seven weeks after the disclosure deadline because, in part,[6] the party receiving the late disclosure caused the delay by producing discovery several months late.

The Ninth Circuit noted its disagreement with the district court's conclusion that the party failed to meet the disclosure deadline because of circumstances within its control, including the timing of when it hired experts. *Id.* at 156.[7] The Ninth Circuit noted the party serving the late disclosure "served a set of interrogatories on [the opposing party] seeking information as to the location of the lumber in question. [The opposing party] refused to answer on the dubious grounds of irrelevancy." *Id.* That is the same "dubious" objection, relevance, Defendant asserted in response to Plaintiffs' discovery seeking sales and damages evidence concerning Defendant's sales to federally funded WIC programs.

In *Potlatch*, "the answers were provided-not seven weeks late, but two and one-half months after demand." *Id.* Paralleling those facts, Defendant's responses will be exactly two and one-half months past due as of August 19, 2013. However, here, Defendant has yet to produce the requested damages data, leaving Plaintiffs'

---

[6] Reversal was also based on a finding of harmless delay. *See infra*, section, IV.B.

[7] This point must be distinguished from the instant case because Defendant thinks it pertinent that Plaintiffs did not request to disclose confidential documents to their experts until just prior the July 31 expert disclosure deadline. Whether Plaintiffs requested that disclosure in July or some earlier time is irrelevant because in either instance Defendant was withholding pertinent information the experts needed to produce reports, or in some cases, Defendant stubbornly refused to clarify whether it had produce only "exemplary" or all responsive documents.

14

experts without all of the data necessary to produce a complete report. "In light of these facts, [the Ninth Circuit stated that] we cannot agree that the [party's] delay in turning over its reports was due to circumstances within its control." *Id*. The *Potlatch* facts parallel those of this case and, therefore, a similar ruling is warranted here given that the Ninth Circuit's holding in *Potlatch* is binding on this court.

Two other courts reached the same conclusion and held that if untimely production of a Fed. R. Civ. P. 26(a)(2)(B) expert report was caused, even in part, by the other party's belated production of discovery responses, the untimely disclosure should be permitted. In *Pacamor Bearings v. Minebea Co*., 918 F. Supp. 491 (D.N.H. 1996), the court allowed a disclosure of an expert witness several months after the initial disclosure date and less than five weeks prior to trial due in part to the opposing party's delay in producing requested materials that were necessary for the expert to produce his report. *Id*. at 508.  The court acknowledged that "this ruling will indeed place an added burden on the parties as they prepare for such trial, but the circumstances of this litigation compel such result." *Id*.

In the second case, *Young v. Norfolk S. Ry. Co*., CIV. A. 3:04-0397, 2005 WL 6011239 (S.D.W. Va. June 3, 2005), similar to the facts here, the party "disclosed the names of these experts, [but] did not include the required reports." *Id*. at *2. As is the case here, the *Young* "plaintiff submits that the reports were not provided because discovery was incomplete and the experts needed more information, in part because they believed the defendant had not been forthcoming with discovery responses." *Id*. The court ruled that "[a]lthough these facts present a relatively weak justification, the Court finds that exclusion of the plaintiff's expert witnesses would be an unreasonably harsh result" and denied Defendant's motion to exclude plaintiffs' expert witnesses. *Id*.

Here, Plaintiffs have provided substantive proof of Defendant's refusal to produce complete discovery responses at best (*see* Ex. 9), and concealment of

15

evidence at worst (*see*, *e.g.*, Exs. 14-16). Defendant has stonewalled discovery for several months and its only excuse has been, in effect, that Plaintiffs should have anticipated that Defendant would not produce discovery absent a motion to compel, and somehow, Plaintiffs' failure to serve discovery with sufficient time to notice that motion allows Defendant to refuse production of the requested materials.

Defendant's dilatory conduct cannot be rewarded by allowing it to serve as justification for exclusion of Plaintiffs' expert report. *See Dellums v. Powell*, 566 F.2d 231, 235 (D.C. Cir. 1977) ("however innocent a failure to provide discovery may be, it is fundamental that a party that does not provide discovery cannot profit from its own failure. Thus Rule 37(b)(2)(C) recognizes that parties failing to comply with discovery requests may be estopped from 'support(ing) or oppos(ing) designated claims or defenses'") (parenthesis in original).

In summary, Plaintiffs' submission of their expert report late is substantially justified due to Defendant's conduct in withholding discovery documents that forced Plaintiffs to seek the evidence elsewhere. This has been a slow, laborious, and less effective method of collecting the information necessary to form the basis of the expert reports. Under these facts and circumstances, and in accord with *Childress* and *Potlatch*, Plaintiffs respectfully request the Court permit submission of Plaintiffs' expert report 19 days late. *See*, *e.g.*, *Pacamor*; *Young*.

**B. Plaintiffs' Submission of their Expert Report 19 Days After the Disclosure Date is Harmless Because Defendant Has Not Been Prejudiced and Any Speculative Prejudice Can be Ameliorated Absent Defendant's Conduct Hereinafter to Fabricate Harm**

Pursuant to Fed. R. Civ. P. 37(c)(1), whether or not Defendant concealed documents and there was no substantial justification for the delay, Plaintiffs should still be permitted to submit their expert report 19 days after the disclosure deadline if the delayed disclosure was "harmless." Fed. R. Civ. P. 37(c)(1). In context, this

16

means "[i]n order to exclude expert testimony, the opposing party must be prejudiced." *Paulissen v. U.S. Life Ins. Co.*, 205 F. Supp. 2d 1120, 1126 (C.D. Cal. 2002) (ruling that "[a]s for the alleged noncompliance with Rule 26(a)(2)(B), Plaintiff must also show prejudice to exclude [the expert] on this ground.") "In determining whether a defendant has been prejudiced, we examine whether the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 131 (9th Cir. 1987).

Defendant has taken the position that any delay is not harmless because it "prejudices Masimo's preparation for trial… preparation of dispositive motions… rebuttal experts, exhibits and witnesses" and is prejudicial because the "Scheduling Order provided for simultaneous exchange of expert reports." (Ex. 13 at 2.) That is a list of speculative harms or harms that will never occur, as discussed below.

The pertinent facts can be summarized as follows: Plaintiffs timely designated their experts. Those designations did not include the experts' reports. Defendant timely disclosed its experts and reports. Plaintiffs' experts did not review or discuss Defendant's expert reports prior to completing their own report. Plaintiffs' expert report was served 19 days after the disclosure date, but more than 10 weeks before trial. Plaintiffs will stipulate to and do not object to an extension of the time for Defendant to submit rebuttal reports so that it has the same 30 days Plaintiffs had to disclose rebuttal experts and reports. With those facts in mind, Plaintiffs now present the precedent supporting the conclusion that Plaintiffs' delay was harmless, or any prejudice can be ameliorated.

In *Potlatch Corp.*, 679 F.2d 153, the Ninth Circuit reversed a trial court's exclusion of an untimely expert report because the delay was substantially justified and harmless. The opposing party in *Potlatch* raised two of the same arguments Defendant raises here, both of which the Ninth Circuit found unavailing. "He noted first that the time left to complete discovery by deposing the experts (five

17

weeks) and otherwise to prepare for trial (ten weeks) would be short. Second, he asserted that there would be a lack of mutuality, i.e., that the exchange of expert reports could not take place simultaneously as had been contemplated by" the scheduling order. *Id*. at 157 (parenthesis in original).

As to the first point, time constraints, the Ninth Circuit held that "there is nothing in the record to suggest why five weeks to depose the Government experts and ten weeks otherwise to prepare for trial would not have been adequate." *Id*. The Court pointed out that the party complaining of the late designation "had lived with this case for months" and therefore, presumably, should be able to prepare for trial within 10 weeks. *Id*.

As to the second point, "[t]he asserted lack of mutuality is no more convincing. As the court was advised at the July 24 hearing, the Government did not disclose the contents of Taxpayer's [expert reports] to its own experts since it was anxious to preserve the independence of their work. The Government, then, had no time advantage over Taxpayer." *Id*.

The similarity to the facts of the instant case are striking. Exactly like *Potlatch*, Defendant received Plaintiffs' expert report more than 10 weeks prior to trial and "there is nothing in the record to suggest… ten weeks otherwise to prepare for trial would not have been adequate" for Defendant. Exactly like *Potlatch*, Defendant "had lived with this case for months," in fact years. Under these circumstances, *Potlatch* stands for the position that Defendant should be well comprised of its own sales data that is the substance of Plaintiffs' expert report, and a brief 19 day delay in disclosure of that report does not "impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Quoting Malone v. U.S. Postal Serv*., 833 F.2d 128, 131 (9th Cir. 1987).

Moreover, and again exactly like *Potlatch*, Plaintiffs in this case "did not disclose the contents of [Defendant's expert reports] to its own experts since it was

18

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF-RELATORS' MOTION FOR LEAVE OF COURT TO SUBMIT EXPERT REPORT 19 DAYS AFTER DISCLOSURE DATE RESULTING FROM MASIMO WITHHOLDING EVIDENCE NEEDED TO COMPLETE REPORTS AND REQUEST FOR SANCTIONS**

1   anxious to preserve the independence of their work."[8]   Potlatch at 157. "The

2   [Plaintiffs here], then, had no time advantage over [Defendant]." *Id.*

3       On these facts, the Ninth Circuit concluded that the asserted "showing of

4   prejudice provides little support for the court's order" and therefore reversed the

5   district court's decision to exclude the untimely expert report. Given that the same

6   facts are present here, and keeping in mind that in *Potlatch* the report was

7   produced 7 weeks late whereas here the report was produced only 19 days late, this

8   Court should follow suit and accept disclosure of Plaintiffs' expert report

9   notwithstanding the brief delay. *See also* U.S. use of *Wiltec Guam, Inc. v. Kahaluu*

10  *Constr. Co.*, 857 F.2d 600, 602-03 (9th Cir. 1988) (delay is not tantamount to

11  automatic prejudice, and though the delay "certainly caused serious inconvenience

12  [it] did not prejudice the outcome of Wiltec's action… Because there is no

13  evidence of actual prejudice, the third factor does not support the sanction.")

14      In another Ninth Circuit case substantially similar to the case at bar, *Lanard*

15  *Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705 (9th Cir. 2010), the Ninth Circuit

16  affirmed a district Court's decision to allow expert testimony despite the expert

17  submitting his report 5 weeks late. Quite similar to the facts here, although the

18  expert "did not strictly comply with the requirements of that Rule [26(a)(2)(B)] by

19  the disclosure deadline, it did timely serve a 'preliminary' expert declaration

20  containing detailed information about [the expert's] background and expertise, a

21  copy of his curriculum vitae, a list of representative cases in which he had testified,

22  a listing of the materials reviewed in support of his declaration, and a statement of

23  his scope of work for this case." *Id.* at 713. Admittedly, Plaintiffs here did not

24  submit a listing of the materials their experts reviewed because they had not yet

25  formulated reports, but the similarities between the two cases are undeniable.

26      Just five weeks later, the *Lanard* expert "served a 'supplemental' expert

27

28  [8]   *See* Declarations of Dr. Bradford (Ex. 20) and Dr. Atkins (Ex. 21.)

19

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF-RELATORS'
MOTION FOR LEAVE OF COURT TO SUBMIT EXPERT REPORT 19 DAYS AFTER DISCLOSURE
DATE RESULTING FROM MASIMO WITHHOLDING EVIDENCE NEEDED TO COMPLETE
REPORTS AND REQUEST FOR SANCTIONS**

declaration that fully satisfied Rule 26(a)(2)(B)." *Id.* Here, just 19 days later, Plaintiffs' experts served supplemental disclosures that fully satisfied Rule 26(a)(2)(B). On these facts, the Ninth Circuit "conclude[ed] the district court did not abuse its discretion or otherwise err by allowing [the expert] to testify at trial." *Id.* Because the same circumstances present themselves here, the Ninth Circuit's ruling in *Lanard* is binding on this Court and should shepherd the outcome of this motion to a similar result.

The Ninth Circuit's opinion in *Lanard* is especially important for an additional reason. The court noted that:

> "[The opposing party], for their part, made no effort whatsoever to depose [the expert], even though they continued to use the ongoing discovery process to compel production of other evidence with which they would attempt to impeach him at trial. Not only was [the expert's] anticipated testimony not a 'surprise' to [the opposing party], they were obviously able to take steps they thought necessary to contend with his testimony at trial."

*Lanard Toys*, 375 F. App'x at 713. Implicit in this statement is the understanding that the opposing party may not sit idly by and fabricate harm.

As of the date this Motion is filed, Defendant has the expert report of Dr. Bradford and Dr. Atkins and nothing prevents it "to take steps they thought necessary to contend with [Plaintiffs' expert] testimony at trial," including the preparation and submission of rebuttal reports. *Id*. Should Defendant refuse to do so, it will be making a conscious decision to not mitigate potential harm and it should thereafter be estopped from using that self-inflicted wound as alleged proof of suffered harm. *See*, e.g., *White v. Meador*, 215 F. Supp. 2d 215, 221 (D. Me. 2002) ("[c]ounsel may not simply sit by until the case has been scheduled for trial and then seek to have an opponent's experts excluded when the basis for that exclusion could have been addressed and remedied months earlie)r.")

The opinion in *Galentine v. Holland Am. Line - Westours, Inc.*, 333 F. Supp. 2d 991 (W.D. Wash. 2004) also discusses mitigation of harm and squarely

20

1   addresses Defendant's allegations of harm relating to its "preparation of

2   dispositive motions" and resulting from non-"simultaneous exchange of expert

3   reports." (Ex. 13 at 2). The holding and key takeaway from the *Galentine* opinion

4   is that an expert should not be excluded where any actual or anticipated harm can

5   be "ameliorated." *Galentine*, 333 F. Supp. 2d at 993-95.

6       In *Galentine*, the defendant filed a motion for summary judgment and

7   plaintiff opposed that motion with an expert report that was disclosed 11 days late,

8   though the expert was timely designated. *Id*. at 994. Parodying the failed argument

9   the defendant raised in *Potlatch*,[9] the defendant in *Galentine* complained of bias in

10  the form of a tactical advantage resulting from non-mutual exchange of expert

11  reports. *Id*.

12      Relying on the seminal Ninth Circuit case of *Yeti by Molly, Ltd. v. Deckers*

13  *Outdoor Corp.*, 259 F.3d 1101 (9th Cir. 2001), the *Galentine* court held that "[t]he

14  potential prejudice that Defendant claims it will suffer is not so severe as to

15  warrant exclusion, especially given the possibility of ameliorating that prejudice."

16  *Id*. Therefore, the court denied defendant's motion to strike plaintiffs' untimely

17  report and permitted it to be used to oppose defendant's summary judgment

18  motion. *Id*. at 994-95. To address any windfall that decision may cause, the court

19  permitted the defendant to depose the expert and aptly noted that "[i]f Defendant

20  concludes that there is new evidence from that deposition that would have resulted

21  in a different ruling on its summary judgment motion, Defendant may then file a

22  motion to alter or amend the judgment pursuant to Rule 60." *Id*. at 994.

23      The *Galentine* opinion provides ample guidance in ruling on the instant

24  Motion given the overwhelming similarities. Defendant has raised the same

25  argument raised in *Galentine* of bias resulting from non-mutual exchange of

26  reports. (Ex. 13 at 2.) That complaint is of no consequence here because Plaintiffs'

27

28  _____
    [9]     *Potlatch Corp. v. United States*, 679 F.2d at 157.

21

1  experts did not review Defendant's reports prior to drafting their report.
2  (Declarations of Dr. Bradford (Ex. 20) and Dr. Atkins (Ex. 21.))

3      In both *Galentine* and here, the experts were designated timely, but the
4  reports were late; 11 days and 19 days, respectively. The court in *Galentine* did not
5  believe that brief delay to be significant, and this court may rely on *Galentine* to
6  rule the same.

7      In both *Galentine* and here, "dispositive motions" were a concern. *See
8  Galentine*, 333 F. Supp. 2d at 994 *and* (Ex. 13, Def.'s Letter at pg. 2.) Defendant
9  here argues the delay was not harmless because it "impacts . . . Masimo's
10 preparation of dispositive motions." (*Id.* at 2.) As noted in *Galentine*, if Defendant
11 is prejudiced in its preparation of its summary judgment motion due to the delay in
12 receiving Plaintiffs' expert report, Defendant can "file a motion to alter or amend
13 the judgment pursuant to Rule 60." *Galentine* Galentine, 333 F. Supp. 2d at 994.
14 With the foregoing similarities and analysis considered, *Galentine* provides yet
15 another authority on which this Court may rely to allow Plaintiffs to submit their
16 expert report a mere 19 days after the disclosure date.

17     Another case within this Circuit, *Adams v. Gillaspie*, C04-5551FDB, 2005
18 WL 2045878 (W.D. Wash. Aug. 24, 2005), vitiates Defendant's assertion that
19 "Plaintiff's (sic) failure to timely serve expert reports prejudices Masimo's ability
20 to prepare for trial in this case, which is now less than three months away." (Ex. 13
21 Def.'s Letter at pg. at 2.) In *Adams*, the court stated that the plaintiff's explanation
22 of financial hardship in retaining an expert did "not explain why Plaintiff was not
23 able to comply with the May 16th deadline, nor why he waited over a month to
24 disclose his expert, nor why he did not seek an extension of time of the court's
25 deadline." *Adams*, 2005 WL 2045878, at *2.

26     That lack of substantial justification notwithstanding, the court turned to the
27 second exception in Rule 37(c)(1), whether the tardy expert disclosure caused any
28 harm. "[T]he court d[id] not find that Plaintiff's disclosure one month past the

22

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF-RELATORS'
MOTION FOR LEAVE OF COURT TO SUBMIT EXPERT REPORT 19 DAYS AFTER DISCLOSURE
DATE RESULTING FROM MASIMO WITHHOLDING EVIDENCE NEEDED TO COMPLETE
REPORTS AND REQUEST FOR SANCTIONS**

deadline unduly prejudices the Defendants." *Id*. Here, unlike in *Adams*, Plaintiffs did disclose their experts timely, so their violation of Rule 26(a)(2)(B) is less severe than in *Adams*. Further, Plaintiffs provided the full report just 19 days late whereas in *Adams* the party did not even make a disclosure until thirty days past the deadline. Though not binding, *Adams* provides additional guidance to support a ruling permitting Plaintiffs' report despite its brief tardiness.

Moreover, "[t]he purpose of a 'detailed and complete' expert report as contemplated by Rule 26(a), Fed.R.Civ.P. 26 advisory Committee's note, is, in part, to minimize the expense of deposing experts, and to shorten direct examination and prevent an ambush at trial." *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo y Beneficencia de P.R.*, 248 F.3d 29, 35 (1st Cir. 2001). Here, Defendant is in possession of Plaintiffs' expert report (Ex. 25), and has always had the raw sales data that is compiled in the expert report, hence, there will be no ambush or surprise now or at trial. Defendant has full and complete knowledge of the opinions Plaintiffs' expert will testify to and the facts and documents on which those opinions are premised.

All the harms Defendant complained of in its Letter of August 2, 2013 (Ex. 13) have already been or can be ameliorated; therefore, Plaintiffs 19 day delay in serving its expert report "is harmless" and Plaintiffs respectfully submit that they should be "allowed to use that information or [expert] witness to supply evidence on a motion, at a hearing, or at a trial" of this matter. Fed. R. Civ. P. 37(c)(1). Plaintiffs also request Defendant be sanctioned such that it be precluded from raising any objections to damages evidence Plaintiffs produce at trial but are unable to produce at the times prescribed by L.R. 16-2, 16-4, and 16-7 resulting from Defendant's concealment of evidence before those times.

## V.   DEFENSE COUNSEL SHOULD BE SANCTIONED FOR THEIR REPEATED DELAY TACTICS AND FRIVOLOUS AND BAD FAITH LITIGATION PRACTICES

23

1    Pursuant to 28 U.S.C.A. § 1927, Defense counsel should be required to
2  "satisfy personally the excess costs, expenses, and attorneys' fees reasonably
3  incurred" with its conduct that "multiplies the proceedings."  Mere "recklessness
4  suffices for 28 U.S.C.A. § 1927" sanctions, as does "bad faith" conduct.  *Fink v.*
5  *Gomez*, 239 F.3d 989, 993 (9th Cir. 2001).  "Bad faith is present when an attorney
6  knowingly or recklessly raises a frivolous argument…" (*Estate of Blas v. Winkler*,
7  792 F.2d 858, 860 (9th Cir. 1986) (citations omitted)), or when an attorney
8  employs "[t]actics undertaken with the intent to increase expenses or delay…"
9  *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989).

10    Defense counsel's conduct on its face violates 28 U.S.C.A. § 1927.  First, on
11  8 separate and distinct occasions Defense counsel flat out refused to respond to
12  meet and confer e-mails and invitations for teleconference.  (*See* Exs. 1-4, 7, 9-10.)
13  On one occasion Defense counsel invited a meet and confer telephone call then
14  withdrew his offer.  (Ex. 4.)  On another occasion Defense counsel invited a meet
15  and confer telephone call and then didn't answer when Plaintiffs' counsel called
16  him, then never returned the phone call.  (Ex. 6 and Ex. 5, pg. 1.)  These tactics are
17  on their face demonstrative of bad faith and are obvious delay tactics undertaken to
18  harass Plaintiffs and prevent them from preparing for trial.

19    Defense counsel also acted in bad faith by knowingly and recklessly raising
20  a frivolous argument regarding Plaintiffs' discovery request for Masimo's sales to
21  WIC programs and agencies.  (Ex. 22 pg. 5-6, Pl. Re. Prod. No. 26.)  Defendant
22  objected to that request based on relevance and refused to produce any documents.
23  (*Id*.)  That is a preposterous objection.  Defense counsel either knows WIC is
24  funded by federal monies or recklessly failed to perform any due diligence prior to
25  raising that objection.  Defendant's conduct was "undertaken with the intent to
26  increase expenses", because it forced Plaintiffs to issue 38 subpoenas to individual
27  state WICs to retrieve the documents, which Plaintiffs began issuing just 5 days
28  after receiving Defendant's baseless objection.

24

Plaintiffs then submitted to Defendant on July 15 a Joint Stipulation and explained that the WIC programs are funded at least in part through federal dollars and therefore the requested documents contain essential information regarding sales to federal government entities, or state and local entities funded with federal dollars.  (Ex. 5 at pg. 3.)  Just two weeks later, on July 30, Plaintiffs produced to Defendant documents they received from the Federal Food and Nutrition Service documenting more than $100,000 of Federal Government monies that state WICs used to purchase Masimo SpHb devices.  (Ex. 23; Ex. 16.)

Unbelievably, 12 days later, Defense counsel initiated a series of frivolous and harassing e-mails demanding Plaintiffs discontinue their search for WIC damages.  (Ex. 24.)  Defense counsel requested Plaintiffs withdraw all state agency subpoenas, that's 38 WIC subpoenas, in approximately 24 hours, by the end of the following business day.  (*Id*.)  This ridiculous demand was a clear attempt to delay Plaintiffs collection of evidence, is severely improper, and should not go unpunished.

Defense counsel has repeatedly raised frivolous arguments, objections, made baseless demands, refused to produce evidence, all with the intention of preventing Plaintiffs from developing their case and preparing for trial that is now fast approaching.  This conduct is sanctionable under 28 U.S.C.A. § 1927 and the improper litigation conduct should not go unpunished.

Under these circumstances, Plaintiffs are entitled to sanctions and request that, as a sanction for this misconduct, Defendant be precluded from raising any objections to damages evidence Plaintiffs produce at trial but are unable to produce at the times prescribed by L.R. 16-2, 16-4, and 16-7 resulting from Defendant's concealment of that evidence before those times.

# VI.  CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court grant the relief requested herein.

Dated: August 19, 2013                          Respectfully submitted,

                                                */s/ Scott Bonagofsky*
                                                SCOTT BONAGOFSKY

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF-RELATORS' MOTION FOR LEAVE OF COURT TO SUBMIT EXPERT REPORT 19 DAYS AFTER DISCLOSURE DATE RESULTING FROM MASIMO WITHHOLDING EVIDENCE NEEDED TO COMPLETE REPORTS AND REQUEST FOR SANCTIONS**

**PROOF OF SERVICE**

I hereby certify that on **August 19, 2013**, I served the below individuals by electronically filing **PLAINTIFF-RELATORS' MOTION FOR LEAVE OF COURT TO SUBMIT EXPERT REPORT 19 DAYS AFTER DISCLOSURE DATE RESULTING FROM MASIMO WITHHOLDING EVIDENCE NEEDED TO COMPLETE REPORT AND REQUEST FOR SANCTIONS** with the clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF Users and interested parties in this action:

ELENA R. BACA (SB# 160564)
Paul Hastings LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA 90071-2228
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

MARK T. PALIN (SB# 135398)
Atkinson, Andelson, Loya, Ruud & Romo PLC
12800 Center Court Drive, Suite 300
Cerritos, CA 90703
Telephone: (562) 653-3200
Facsimile: (562) 653-3333

PAYSON J. LEMEILLEUR (SB# 205690)
Knobbe, Martens, Olson & Bear, LLP
2040 Main St., 14th Floor
Irvine, California 92614
Tel: (949) 760-0404
Fax: (949) 760-9502

*Attorneys for Defendant*

27

*Masimo Corporation*

SHANA MINTZ (SB# 175147)
Assistant United States Attorney
United States Department of Justice
Office of the US Attorney
Federal Bldg Room 7516
300 N Los Angeles St
Los Angeles, CA 90012
Telephone: (213) 894-4756

*Attorney for Plaintiff*
*The United States*

   */s/ Scott Bonagofsky*

SCOTT BONAGOFSKY

28
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF-RELATORS'
MOTION FOR LEAVE OF COURT TO SUBMIT EXPERT REPORT 19 DAYS AFTER DISCLOSURE
DATE RESULTING FROM MASIMO WITHHOLDING EVIDENCE NEEDED TO COMPLETE
REPORTS AND REQUEST FOR SANCTIONS**